1
2
3
4
5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ANDREW LAYMAN, | No. 2:05-cv-980 |
| Plaintiff, | **ANSWER AND COUNTERCLAIM OF DEFENDANT PERMANENT PORTFOLIO FAMILY OF FUNDS, INC.** |
| v. | |
| THE PERMANENT PORTFOLIO FAMILY OF FUNDS, INC., | |
| Defendant. | |

Defendant Permanent Portfolio Family of Funds, Inc. ("Defendant" or "PPFF") hereby answers the Complaint filed by Plaintiff Andrew Layman ("Plaintiff" or "Layman") as follows:

## ANSWER

1.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint. To the extent that a further answer is required, Defendant denies the allegations contained in Paragraph 1.

2.      Defendant admits the allegations contained in Paragraph 2 of the Complaint.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC - (No. 2:05-cv-980) - 1

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

3.   Defendant admits that it has contacted Plaintiff at his residence in King County, Washington regarding actual or contemplated business transactions, but denies all other allegations contained in Paragraph 3.

4.   Defendant admits the parties entered into a Common Stock Purchase Warrant ("Warrant") in California on April 6, 1990 regarding 22,500 shares of Symantec Corporation ("Symantec") stock owned by Layman. A true and correct copy of the Warrant is attached as Exhibit 1 to this Answer and Counterclaim. In response to the remaining allegations contained in Paragraph 4 of the Complaint, Defendant asserts that the Warrant speaks for itself and that no further response is required.

5.   Defendant denies the allegations contained in Paragraph 5 of the Complaint. In further response, Defendant asserts that the Warrant speaks for itself and that no further response is required.

6.   In response to Paragraph 6 of the Complaint, Defendant admits that Layman deposited 22,500 shares of Symantec common stock with State Street Bank and Trust Company ("State Street"), the custodian for PPFF, in Boston, Massachusetts. The remainder of Paragraph 6 is denied.

7.   In response to the allegations contained in Paragraph 7 of the Complaint, Defendant admits that it continued to have contact with Plaintiff after Plaintiff moved to King County, Washington. Defendant also admits that it sent Plaintiff promotional materials, routinely sent to PPFF's shareholders, after Plaintiff moved to King County, Washington. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remainder of Paragraph 7. Accordingly, all other allegations in Paragraph 7 are denied.

8.   In response to the first sentence of Paragraph 8, Defendant states that the Warrant speaks for itself and that no further response is required.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 2

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   Defendant admits there were three two-for-one stock splits in 1992, 2003 and
2   2004.   Defendant also admits that State Street Bank currently holds 360,000
3   shares of Symantec stock issued to Layman. All other allegations in Paragraph 8
4   are denied.

5       9.      Defendant admits the allegations contained in the first and second
6   sentences of Paragraph 9 of the Complaint.   Defendant also admits that the
7   election to exercise the Warrant, sent to Layman by PPFF, did not identify a
8   location or place for the closing, but denies that any such identification of the
9   location or place for the closing was required by or necessary under the Warrant.

10      10.     Defendant denies the allegations contained in the first sentence of
11  Paragraph 10 of the Complaint.  With respect to the remainder of Paragraph 10,
12  Defendant avers that the Warrant speaks for itself and that no further response is
13  required. All other allegations in Paragraph 10 are denied.

14      11.     In response to Paragraph 11 of the Complaint, Defendant admits
15  that it did not return the Warrant or convey the purchase price on or before April 6,
16  2005, but states expressly that it exercised its rights to purchase the stock in
17  accordance with the Warrant, prior to that date. All other allegations contained in
18  Paragraph 11 are denied.

19      12.     In response to Paragraph 12 of the Complaint, Defendant
20  incorporates by reference and re-alleges its responses to paragraphs 1 through 11
21  above.

22      13.     Defendant admits the allegations contained in Paragraph 13 of the
23  Complaint.

24      14.     Paragraph 14 contains a conclusion of law to which no response
25  is required.  To the extent a further response is required, Defendant denies the
26  allegations contained in Paragraph 14.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 3

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1       15.     In response to Paragraph 15 of the Complaint, Defendant admits

2    that it did not return the Warrant or convey the purchase price on or before April 6,

3    2005, but states expressly that it exercised its rights to purchase the stock in

4    accordance with the Warrant, prior to that date.

5       16.     Defendant denies the allegations contained in Paragraph 16 of the

6    Complaint.

7       17.     Defendant denies the allegations contained in Paragraph 17 of the

8    Complaint.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff fails to state any claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff, by his own acts, omissions, conduct and activities, is equitably estopped from asserting and has waived his claims against Defendant.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because of the independent doctrines of waiver and ratification.

### COUNTERCLAIM

### I.    THE PARTIES

1.     Defendant/Counterclaim Plaintiff, PPFF, is a Maryland corporation, with its principal place of business in San Francisco, California.

2.     Upon information and belief, Plaintiff/Counterclaim Defendant, Layman, is an individual residing in King County, Washington.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 4

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

## II.   JURISDICTION AND VENUE

3.     This Court has diversity jurisdiction over this dispute and the parties pursuant to 28 U.S.C. § 1332 because Counterclaim Plaintiff and Counterclaim Defendant are citizens of different states, and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  The Warrant was worth over $250,000 as of May 10, 2005 and the 360,000 shares of Symantec stock that are the subject of the Warrant were worth over $ 6.5 million as of May 10, 2005.

4.     This Court has personal jurisdiction over Counterclaim Defendant in that he is a resident of the State of Washington, King County, and thus has sufficient contacts within the State of Washington to satisfy due process requirements.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## III.   FACTUAL BACKGROUND

6.     PPFF is a registered investment company that consists of four separate mutual fund portfolios, each with its own separate investment objective and policies.

7.     On April 6, 1990, PPFF, on behalf of one of its portfolios, the "Permanent Portfolio," entered into a Common Stock Purchase Warrant with Layman regarding the purchase of 22,500 shares of the common stock of Symantec. A true and correct copy of the Warrant is attached hereto as Exhibit 1 and is incorporated herein by reference.  The Warrant provided PPFF with the right to purchase the referenced shares of Symantec stock from Layman for a particular price on or before April 6, 2005.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 5

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

8.     Article 2.2 of the Warrant states that upon any subdivision or dividend of the underlying shares of Symantec stock, other than a cash dividend payable out of current earnings, the "holder of [the] Warrant [PPFF] shall thereafter . . . be entitled . . . to purchase" the additional shares created by such subdivision or dividend.

9.     Through stock splits or other corporate transactions involving Symantec stock between 1990 and 2005, the number of shares that PPFF was entitled to purchase under the Warrant had grown to 360,000.

10.     Article 5 of the Warrant provided that Layman would deposit with State Street stock certificates for the Symantec shares covered by the Warrant, "along with stock assignments executed in blank." Consistent with this provision, Layman deposited certificates for the original 22,500 shares covered by the Warrant and related "stock assignments" with State Street. Although Layman deposited certificates for the additional 337,500 shares of Symantec common stock created by stock splits or other transactions affecting the original 22,500 shares, he did not provide State Street with "stock assignments" for the additional shares.

11.     Article 2.7 of the Warrant provides that "[t]he Maker [Layman] will not, through any voluntary action, avoid or seek to avoid the observance or performance or any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such action as may be necessary or appropriate in order to equitably protect the rights of the holder or holders [i.e., PPFF] of this Warrant" (emphasis supplied).

12.     Article 1.2 of the Warrant, entitled "Method of Exercise," provides that: "In the event the holder of this Warrant [i.e., PPFF] elects to exercise in whole or in part, the holder shall give the Maker [i.e., Layman] fourteen (14) days'

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 6

Riddell Williams p.s.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1 | prior written notice of its election to exercise, specifying the number of shares of
2 | Common Stock to be purchased, the Purchase Price per share as then in effect,
3 | and the closing date and time of the exercise."  On or about March 10, 2005,
4 | PPFF transmitted to Layman its written election to exercise the Warrant and
5 | purchase the full amount of Symantec stock that it was entitled to purchase under
6 | the Warrant.  The election to exercise stated that PPFF elected to purchase from
7 | Layman 360,000 shares of Symantec stock at a purchase price per share of
8 | $0.695 for an aggregate price of $250,200.  The election to exercise also stated
9 | that the closing date and time for the transaction would be March 25, 2005 at 4:00
10 | p.m. (E.S.T.).  PPFF advised Layman that the purchase price would be paid and
11 | the Warrant surrendered at the time of the closing.  PPFF requested that Layman
12 | contact PPFF's president to coordinate the closing.

13 | 13.    On or about March 15, 2005, Michael Cuggino, the President of
14 | PPFF, spoke by telephone with Layman and confirmed Layman's receipt of the
15 | election to exercise sent by PPFF.

16 | 14.    On or about March 23, 2005, PPFF informed Layman that State
17 | Street had informed PPFF that Layman must complete certain stock power forms
18 | for the Symantec shares before the stock could be transferred into PPFF's name.
19 | State Street acts as custodian for PPFF and the Symantec shares were on deposit
20 | with State Street. PPFF requested that Layman execute the stock power forms
21 | and return them to State Street.  PPFF informed Layman that, after receipt of the
22 | stock power forms, PPFF would surrender the Warrant and convey a certified
23 | check for the purchase price to Layman.  PPFF was prepared to close the stock
24 | purchase transaction before April 6, 2005.

25 | 15.    Between March 15, 2005 and May 10, 2005, PPFF attempted,
26 | telephonically and via email correspondence, to coordinate with Layman regarding

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 7

1    his execution and submission of the stock power forms required by State Street.

2    PPFF also attempted to coordinate with Layman regarding the closing of the stock

3    purchase transaction pursuant to the election by PPFF to exercise its rights under

4    the Warrant.

5         16.     On or about April 13, 2005, PPFF and Layman agreed that the stock

6    power forms and the Warrant and certified check would be exchanged at the

7    same time.   On May 4, 2005, the parties agreed that the closing of the stock

8    purchase transaction would occur at an in-person meeting between Layman and

9    Clement M. Wallace, the Secretary of PPFF, in Palo Alto, California, on May 12,

10    2005.

11         17.     The Complaint was filed by Layman on May 10, 2005. At no time

12    prior to May 10, 2005 did Layman assert that he was not obligated to provide the

13    signed stock power forms required by State Street. Further, at no time prior to

14    May 10, 2005, did Layman allege that PPFF had failed to exercise properly and

15    timely its option to purchase the Symantec stock under the Warrant.

16         18.     Article 4 of the Warrant provides that: "Each of the parties agrees to

17    perform such other and further acts as shall be necessary to effectuate the rights

18    of the other party to this Warrant." PPFF has performed all acts necessary to

19    effectuate Layman's rights under the Warrant.

20         19.     In contrast, Layman has failed to perform all acts required of him

21    pursuant to the Warrant.   Layman failed to respond timely to PPFF's

22    communications regarding its election to exercise its rights under the Warrant.

23    Further, Layman failed to execute the stock power forms, as contemplated and

24    required under the Warrant, and ultimately reneged on his agreement to execute

25    the stock power forms required by State Street. Layman also failed to appear and

26    perform on the agreed-upon closing date.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 8

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

20. Article 1.1 of the Warrant states that "[t]he purchase rights represented by this Warrant are exercisable at the option of the holder thereof in whole at any time, or in part from time to time." Article 1.2 of the Warrant, entitled "Method of Exercise," provides that: "In the event the holder of this Warrant [i.e., PPFF] elects to exercise it in whole or in part, the holder shall give the Maker [i.e., Layman] fourteen (14) days' prior written notice of its election to exercise, specifying the number of shares of Common Stock to be purchased, the Purchase Price per share as then in effect, and the closing date and time of the exercise." PPFF complied with the requirements of Article 1.2 of the Warrant.

21. PPFF properly noticed its election to exercise the Warrant on March 10, 2005. PPFF also repeatedly expressed its ability and willingness to close the purchase transaction on or before April 6, 2005. Layman's failure to perform his obligations under the Warrant and his deceptive actions in concealing from PPFF his intention to arrange for a closing date after April 6, 2005, in order to try to justify his refusal to perform his obligations under the Warrant, delayed the closing of the purchase until after April 6, 2005.

## CLAIMS FOR RELIEF

### Count One
### (Breach of Contract – Specific Performance)

22. PPFF hereby incorporates by reference each and every one of the allegations contained in paragraphs 1 through 21 as if fully set forth herein.

23. The Warrant constitutes a contract between Layman and PPFF. Layman breached his contract with PPFF by failing to abide by the terms and conditions of the Warrant and, in particular, by failing to comply with his obligations under Articles 2.7, 4 and 5 of the Warrant.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 9

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

24.    As set forth above, the Warrant requires Layman to "assist in the carrying out of all [the terms of the Warrant] and [to] tak[e] . . . all such action as may be necessary or appropriate in order to equitably protect the rights of the holder or holders." Exhibit 1 at Article 2.7.   Layman breached this provision by failing to assist in carrying out the terms of the Warrant and by failing to respond timely to PPFF's election to exercise its rights to purchase the Symantec stock under the Warrant, by failing to execute the stock power forms required by State Street to effect the purchase by PPFF, by delaying the closing of the stock purchase transaction and by refusing repeated requests by PPFF for his assistance in completing the transaction.

25.    The Warrant also provides that "[e]ach of the parties agrees to perform such other and further acts as shall be necessary to effectuate the rights of the other party to this Warrant." Exhibit 1 at Article 4. Layman breached Article 4 of the Warrant because he failed to perform acts "necessary to effectuate" PPFF's rights. Layman failed to respond timely to PPFF's election to exercise its rights under the Warrant, failed to execute the stock power forms, delayed the closing of the stock purchase transaction and refused repeated requests by PPFF for his cooperation in completing the transaction.

26.    Layman delivered the stock powers for the first 22,500 shares of Symantec stock as contemplated under the Warrant. Under the Warrant generally (and Article 5 in particular), Layman had an obligation to deliver stock powers for any additional shares created by a stock split or other corporate transaction to State Street.   Layman failed to comply with this obligation, despite PPFF's repeated requests that he do so.

27.    Pursuant to the terms and conditions of the Warrant, PPFF fulfilled its obligations and was not in material breach of the Warrant at any time.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 10

Riddell Williams p.s.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

28. All conditions precedent to PPFF's cause of action have been performed or have occurred. Contrary to Layman's assertions, payment of the purchase price and surrender of the Warrant were not conditions precedent to Layman's obligation to deliver the required stock power forms and close the stock purchase transaction contemplated by the Warrant.

29. As a direct and proximate result of Layman's breach, PPFF has sustained damages in an amount in excess of $ 6.5 million. PPFF is entitled to specific performance under the contract.

30. PPFF furthermore alleges that the Warrant is a valid and enforceable contract, which contains an implied covenant of good faith and fair dealing.

31. Layman breached the implied covenant of good faith and fair dealing of the Warrant by, *inter alia*, the following:

a. Failing to abide by the terms and conditions of the Warrant;

b. Failing timely to execute and deliver the stock power forms required by State Street;

c. Failing to respond to PPFF's requests to carry out those acts necessary to complete the closing of the stock purchase transaction referenced in the election to exercise sent to him by PPFF;

d. Acting only in his best interest instead of assisting in the carrying out of the terms of the Warrant;

e. Failing and refusing to take actions necessary and appropriate to equitably protect PPFF's rights;

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 11

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

f.      Failing and refusing to perform the acts necessary to effectuate PPFF's rights; and

g.      Breaching the terms of the Warrant.

32.     The foregoing conduct by Layman has injured or destroyed PPFF's rights to receive the fruits and enjoy the benefits of the Warrant.

33.     Layman's breach of the implied covenant of good faith and fair dealing of the Warrant has caused direct and consequential damages to PPFF in an amount to be proved at trial.

**Count Two**
**(Breach of Contract – Repudiation)**

34.     PPFF hereby incorporates by reference each and every one of the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

35.     As set forth in paragraphs 23 through 33, Layman's repudiation of his obligations under the terms of the Warrant has caused PPFF to suffer damages because it has been unable to take possession of, or negotiate, the shares of Symantec stock referenced in its election to exercise.   PPFF may maintain an action for damages caused by Layman's anticipatory breach of the contract.

36.     Pursuant to the terms and conditions of the Warrant, PPFF fulfilled its obligations and was not in material breach of the Warrant at any time.

37.     All conditions precedent to PPFF's cause of action have been performed or have occurred.

38.     As a direct and proximate result of Layman's breach, PPFF has sustained damages in an amount in excess of $ 6.5 million.

39.     As a result of Layman's breach of contract, PPFF is also entitled to its reasonable attorneys' fees and costs.

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 12

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

### Count Three
### (Promissory Estoppel)

40.     PPFF hereby incorporates by reference each and every one of the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41.     On or about March 10, 2005, PPFF sent Layman its written election to exercise its rights to purchase Symantec stock under the Warrant.  Beginning in March, 2005, in a series of telephone calls and email communications, Layman agreed to take all steps necessary to close the stock purchase transaction specified in the election by PPFF to exercise its rights under the Warrant.

42.     Between April 13, 2005 and May 10, 2005, the parties, through a series of telephone conferences and email communications, agreed to meet in-person to close the stock purchase transaction.   Layman and PPFF agreed that the closing would occur on May 12, 2005.

43.     Layman knew or should have known that PPFF would be reasonably induced to rely on Layman's promises, assurances and representations that he would take all steps necessary to facilitate the purchase by PPFF of the Symantec stock.  PPFF reasonably relied on Layman's representations that he would take the steps necessary to close the stock purchase transaction after April 6, 2005.

44.     On or about May 10, 2005, despite agreeing with PPFF to close the stock purchase transaction on May 12, 2005, Layman filed suit against PPFF in King County Superior Court.

45.     Layman has failed to perform any part of his promises, assurances and representations.

46.     As a result of Layman's failure to perform according to his promises, assurances and representations, PPFF has been damaged in an amount greater than  $ 6.5 million.

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   47.   Injustice can be avoided only by enforcing Layman's promises,

2   assurances and representations completely.

3   ## Count Four
    ### (Equitable Estoppel)

4

5   48.   PPFF hereby incorporates by reference each and every one of the

6   allegations contained in paragraphs 1 through 46 as if fully set forth herein.

7   49.   On or about April 6, 1990, Layman executed the Warrant and by the

8   terms therein, represented to PPFF that he would "assist in the carrying out of all

9   [the terms of the Warrant] and [to] tak[e] . . . all such action as may be necessary

10  or appropriate in order to equitably protect the rights of the holder or holders."

11  Exhibit 1 at Article 2.7.   In addition, Layman agreed "to perform such other and

12  further acts as shall be necessary to effectuate the rights of [PPFF] to this

13  Warrant."   Exhibit 1 at Article 4.   In making these promises, Layman knew or

14  should have known that PPFF would be reasonably induced to rely on Layman's

15  promises, assurances and representations in executing the Warrant and in

16  electing to exercise its rights under the Warrant.

17  50.   On or about March 10, 2005, PPFF sent Layman a written election

18  to exercise its rights under the Warrant.   Layman failed to execute stock power

19  forms necessary to facilitate the purchase of the Symantec shares by PPFF.

20  Before May 10, 2005, Layman never disputed that he was required to execute the

21  stock power forms.

22  51.   Between April 13, 2005 and May 10, 2005, the parties, through a

23  series of telephone conferences and email communications, agreed to meet on

24  May 12, 2005, to close the stock purchase transaction.

25  52.   PPFF reasonably relied on acts and statements by Layman

26  regarding his delayed performance of his duties under the Warrant and the parties

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 14

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   agreed to delay the closing of the purchase to accommodate Layman's

2   convenience and schedule.

3   53.   On or about May 10, 2005, despite agreeing with PPFF to close the

4   stock purchase transaction on May 12, 2005, Layman filed suit against PPFF in

5   King County Superior Court.

6   54.   Had PPFF known that Layman would not follow-through on his

7   statements and assurances regarding his future performance of his duties, PPFF

8   would have sought other mechanisms to compel Layman to complete his

9   obligations under the Warrant.

10   55.   PPFF will be prejudiced if Layman is permitted to renege on his

11   obligations under the contract and if he is permitted to contradict or repudiate his

12   agreement to close the stock purchase transaction after April 6, 2005.

13   56.   As a result of Layman's repudiation of his agreement to close the

14   transaction after April 6, 2005, PPFF has been damaged in an amount greater

15   than $ 6.5 million

16   **PRAYER FOR RELIEF**

17   **WHEREFORE**, Defendant Permanent Portfolio Family of Funds, Inc.

18   requests that this Court award the following relief:

19   (a)   Dismiss Plaintiff's Complaint with prejudice;

20   (b)   Enter judgment in favor of PPFF and against Layman on
        Counts One through Four of the Counterclaim;

21
22   (c)   Enter a judgment that PPFF is entitled to the possession of the
        certificates of Symantec stock and ordering Layman to perform
23        all acts necessary for State Street to turn over the certificates to
        PPFF in return for payment as contemplated in the election to
24        exercise sent to Layman by PPFF on March 10, 2005;

25   (d)   Award a money judgment to PPFF against Layman in the
        amount of the decline in the market value of the 360,000

26

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 15

1  shares of Symantec stock, if any, occurring between May 12,
   2005 and the date of the Court's order;

2

   (e)   Award prejudgment interest;

3

   (f)   Award costs and fees, including reasonable attorneys' fees, to
4        PPFF; and

5  (g)   Grant such other and further relief as the Court deems
         appropriate.

6

7

   Dated: June 6, 2005                        Respectfully submitted,

8

9

10                                            Paul J. Kundtz, WSBA # 13548
                                              pkundtz@riddellwilliams.com
11                                            Courtney L. Seim, WSBA # 35352
                                              cseim@riddellwilliams.com
                                              RIDDELL WILLIAMS, P.S.
12                                            Suite 4500
                                              1001 Fourth Avenue Plaza
13                                            Seattle, Washington 98154
                                              Tel.: 206-624-3600
14                                            Fax: 206-389-1708

15

                                              Of Counsel:
16                                            Stephen G. Topetzes
                                              Lisa M. Richman
17                                            KIRKPATRICK & LOCKHART
                                              NICHOLSON GRAHAM LLP
18                                            1800 Massachusetts Avenue, N.W.
                                              Washington, DC
19                                            Tel: 202-778-9001
                                              Fax: 202-778-9100

20

                                              Attorneys for Defendant and
21                                            Counterclaimant, Permanent
                                              Portfolio Family of Funds, Inc.

22

23

24

25

26

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 16

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2005, I electronically filed the Answer and Counterclaims of Defendant Permanent Portfolio Family of Funds, Inc. with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| William F. Cronin<br>Corr Cronin Michelson Baumgardner & Preece, LLP<br>1001 Fourth Avenue Plaza, Suite 3900<br>Seattle, WA 98154-1051<br>Email: wcronin@corrcronin.com<br>Phone: (206) 621-1406<br>Fax: (206) 625-0900 | Laurie N. Thornton<br>Corr Cronin Michelson Baumgardner & Preece, LLP<br>1001 Fourth Avenue Plaza, Suite 3900<br>Seattle, WA 98154-1051<br>Email: lthornton@corrcronin.com<br>Phone: (206) 274-8666<br>Fax: (206) 625-0900 |

There are no parties that require manual service on this case.

Executed at Seattle, Washington this 6th day of June, 2005.

Courtney Seim, WSBA #35352
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA  98154
Phone:  (206) 624-3600
Fax:  (206) 389-1708
email: cseim@riddellwilliams.com

ANS AND COUNTERCLAIM OF DEF PERMANENT PORTFOLIO
FAMILY OF FUNDS, INC. - (No. 2:05-cv-980) - 17

# EXHIBIT 1

THIS WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES
ACT OF 1933 OR ANY APPLICABLE BLUE SKY ACTS AND MAY BE TRANS-
FERRED OR SOLD ONLY PURSUANT TO REGISTRATION UNDER SUCH ACTS,
OR TO EXEMPTIONS AVAILABLE THEREUNDER.

April 6, 1990

No. 1 of 1        For the Purchase of 22,500 Shares of
                 Common Stock, $0.01 par value per share

COMMON STOCK PURCHASE WARRANT

This certifies that, for 73.2% of the Purchase Price, as
defined below, receipt of which at 7 Fourth Street, Suite 14,
Petaluma, California, 94952, at 1:15 p.m. on Friday, April 6,
1990, is hereby acknowledged by the undersigned maker ("Maker"),
Permanent Portfolio Family of Funds, Inc. - Permanent Portfolio,
or registered assigns, is entitled, subject to the terms and
conditions hereinafter set forth, at any time on or after the
date hereof to and including April 6, 2005, to purchase from time
to time up to 22,500 shares of unrestricted Common Stock, $0.01
par value per share ("Common Stock"), of Symantec Corporation, a
Delaware corporation (the "Company), from the Maker, at a price
per share equal to 55.6% of the closing bid price of such shares
on April 6, 1990, such price and the number of shares purchasable
pursuant hereto being subject to adjustment upon the contingen-
cies set forth in this Warrant (such price, as adjusted from time
to time, is called the "Purchase Price").  The Purchase Price
shall be payable in cash or by certified or cashier's bank check
in lawful funds of the United States of America.  Upon presenta-
tion and surrender of this Warrant, together with payment of the
Purchase Price of the shares of Common Stock thereby purchased,
to the Maker or, upon his unavailability, at the office of the

1

Transfer Agent of the Company for the transfer of such stock or, if at any time there is no such Transfer Agent, at the principal office of the Company, the holder of this Warrant shall be entitled to receive a certificate or certificates for the shares of Common Stock so purchased (the "Purchased Shares"). All shares which may be issued upon the exercise of this Warrant will, upon issuance, be fully paid and nonassessable and free from all taxes, liens and charges with respect thereto. Upon lapse of the Warrant or failure to exercise prior to April 6, 2005, the parties agree that the Warrant will have no further force and effect, the holder will forthwith return the original Warrant to the Maker and the holder will direct the custodian of the shares to return the shares directly to the Maker.

This Warrant is subject to the following further terms and conditions:

1. **Exercise of Warrant**

1.1 **Right To Exercise**

The purchase rights represented by this Warrant are exercisable at the option of the holder hereof in whole at any time, or in part from time to time. In the case of the purchase of less than all the shares purchasable under this Warrant, the Maker shall cancel this Warrant upon the surrender hereof and shall execute and deliver a new Warrant of like tenor for the balance of the shares purchasable hereunder.

1.2 **Method of Exercise; Right of Prevention**

In the event the holder of this Warrant elects to exercise it in whole or in part, the holder shall give the Maker

2

fourteen (14) days' prior written notice of its election to exercise, specifying the number of shares of Common Stock to be purchased, the Purchase Price per share as then in effect, and the closing date and time of the exercise. Notwithstanding the foregoing, the Maker shall have the right to prevent any such exercise, in whole or in part, by paying to the holder, in cash or by certified or cashier's bank check in lawful funds of the United States of America, the difference between the Purchase Price per share and the then current fair market price per share of the Common Stock, multiplied by the number of shares of Common Stock as to which the Maker elects to exercise his right of prevention; provided, however, that the Maker must give the holder written notice of exercise of his right of prevention within seven (7) days after his receipt of the holder's notice of exercise, specifying the number of shares of Common Stock to which the notice applies, the then current fair market value of such shares, and the method of determination of such value, which method must be based upon a readily ascertainable market value. Any such exercise of the Maker's right of prevention shall be consummated at the closing specified in the holder's notice of exercise and the number of shares of Common Stock purchasable by this Warrant shall thereupon be reduced by the number of shares subject to the Maker's exercise of his right of prevention.

### 1.3 Commission

The Maker shall pay to World Money Securities, Inc., a registered broker-dealer, a commission equal to two percent (2%) of the acquisition price of this Warrant, payable at the time

3

this Warrant is executed.

2. Adjustments

2.1 Adjustment to Purchase Price

(a) If the Company shall at any time (i) subdivide its outstanding shares of Common Stock into a greater number of shares or (ii) declare a dividend or make any other distribution upon any stock of the Company payable in shares of Common Stock, then in any such event, the Purchase Price in effect immediately prior to such issuance, subdivision, declaration or distribution shall be proportionately reduced based upon the relative percentage of Common Stock ownership.  Conversely, if the outstanding shares of Common Stock of the Company shall be combined into a smaller number of shares, then the Purchase Price in effect immediately prior to such combination shall be proportionately increased.

(b) If the Company shall at any time declare a dividend or make any other distribution upon the Common Stock payable in cash or property other than that included within the scope of Section 2.1(a) above, then in such event, the Purchase Price shall be reduced by the value of the distribution measured at the time of the distribution.

2.2 Adjustment of Shares Purchasable.

Except in the case of a cash dividend payable out of current earnings, upon any adjustment pursuant to Section 2.1(a) or Section 2.1(b) of the Purchase Price, the holder of this Warrant shall thereafter (until another such adjustment) be entitled (instead of being entitled to purchase the number of

4

shares specified hereinabove at the Purchase Price in effect
immediately prior to such adjustment) to purchase at the adjusted
Purchase Price the number of shares of Common Stock calculated to
the nearest full share obtained, by multiplying the number of
shares of Common Stock purchasable immediately prior to such
adjustment, by the Purchase Price in effect immediately prior to
such adjustment and dividing the product so obtained, by the
applicable adjusted Purchase Price.

2.3 <u>Warrant Need Not Be Changed to Reflect Adjustments</u>.

This Warrant need not be changed to reflect any adjust-
ment or change in the Purchase Price or the number of shares of
Common Stock actually purchasable hereunder pursuant to the terms
hereof.

2.4 <u>Reorganization, Merger, etc</u>.

If any capital reorganization or reclassification of
the capital stock of the Company, or consolidation or merger of
the Company with another corporation, or the sale or conveyance
of all or substantially all of its assets to another corporation
shall be effected, then the holder hereof shall thereafter have
the right to purchase and receive upon the basis and upon the
terms and conditions specified in this Warrant and in lieu of the
shares of the Common Stock of the Company immediately theretofore
purchasable and receivable upon the exercise of the rights repre-
sented hereby, such shares of stock, securities or assets as may
be issued or payable with respect to or in exchange for a number
of outstanding shares of such Common Stock equal to the number of
shares of such Common Stock immediately theretofore purchasable

5

and receivable upon the exercise of the rights represented hereby had such reorganization, reclassification, consolidation, merger, sale or conveyance not taken place, and in any such case appropriate provision shall be made with respect to the rights and interest of the holder of this Warrant to the end that the provisions hereof (including without limitation provisions for adjustment of the Purchase Price and of the number of shares purchasable upon the exercise of this Warrant) shall thereafter be applicable, as nearly as may be, to any stock, securities or assets thereafter deliverable upon the exercise hereof.

    2.5 <u>Notice to Warrantholder or Warrantholders</u>.

    (a) Upon any adjustment of the Purchase Price or any increase or decrease in the number of shares of Common Stock purchasable upon the exercise of this Warrant then, and in each such case, the holder within 120 days thereafter shall give written notice thereof, pursuant to Section 7, which notice shall state the adjusted Purchase Price and the increased or decreased number of shares purchasable upon the exercise of this Warrant, setting forth in reasonable detail the method of calculation and the facts (including a statement of the consideration received or deemed to have been received by the Company for any additional shares or convertible or exchangeable securities or rights or options) upon which such calculations are based. Where appropriate, such notice may be given in advance and included as a part of the notice required to be mailed under the provisions of paragraph (b) of this subsection 2.5.

    (b) In case at any time:

6

(i) the Company shall declare any dividend upon its Common Stock payable in cash, in the Common Stock of the Company, or otherwise; or

(ii) the Company shall offer for subscription to the holders of its Common Stock any additional shares of stock of any class or any other securities convertible into or exchange-able for shares of stock or any rights or options to subscribe thereto; or

(iii) there shall be any capital reorganization or reclassification of the capital stock of the Company, or a sale or conveyance of all or substantially all of the assets of the Company, or a consolidation or merger of the Company with another corporation; or

(iv) there shall be a voluntary or involuntary dissolution, liquidation or winding up of the Company; then, in any one or more of said cases, the Maker shall give written notice, pursuant to Section 7, at the earliest time practicable (and, unless otherwise impossible, not less than 30 days before any record date or other date set for definitive action) of the date as of which (A) the books of the Company shall close or a record date shall be taken for such dividend, distribution or subscription rights or options or (B) such reorganization, re-classification, sale, conveyance, consolidation, merger, dissolu-tion, liquidation or winding up shall take place, as the case may be.

2.6 <u>Conditions Not Specifically Covered</u>.

In case at any time conditions shall arise by reason of

7

action taken by the Company, which, in the opinion of the holder
or holders of this Warrant, are not adequately covered by Article
2 of this Warrant, so as to potentially, materially and adversely
affect the rights of the holder or holders of this Warrant, or in
case at any time any such conditions are expected to arise by
reason of any action known to the Maker, the holder or holders of
this Warrant at its or their sole expense may appoint a firm of
independent certified public accountants of recognized standing
(which may be the firm that regularly examines the financial
statements of the Company), who shall give their opinion as to
the adjustments, if any (not inconsistent with the standards
established in this Section 2), of the Purchase Price and the
number of shares of Common Stock purchasable pursuant hereto
(including, if necessary, any adjustment as to the securities
into which this Warrant may thereafter be exercisable), which
are, or would be, required to preserve without dilution the
rights of the holder or holders of this Warrant to the extent
provided herein.  The holder agrees to provide notice to Maker no
fewer than seven days prior to appointment of the independent
certified public accountant that holder intends to exercise his
rights under this paragraph.  Holder further agrees to provide a
copy of the CPA's report and all correspondence relevant thereto
to the Maker within seven days after receipt by holder.  Maker
shall thereafter have thirty days to review the CPA's report.  If
the Maker agrees with the report then Maker shall make the ad-
justment recommended by the CPA.  If the Maker disagrees with the
report, the Maker shall notify the holder of such disagreement

8

and the reasons for such disagreement within the 30-day period and any controversy or claim arising out of or relating thereto shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

2.7 <u>No Impairment</u>.

The Maker will not, through any voluntary action, avoid or seek to avoid the observance or performance or any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such action as may be necessary or appropriate in order to equitably protect the rights of the holder or holders of this Warrant.  The Maker agrees not to grant any other warrants, options or other rights convertible into or relating or pertaining to the Common Stock without the consent of the holder or holders of this Warrant.

3. <u>Status of Warrantholder</u>.

This Warrant does not entitle the holder or holders hereof to any rights as a shareholder of the Company.

4. <u>Remedies</u>.

Each of the parties stipulates that the remedies at law of the other party in the event of any default or threatened default by the other party in the performance of or compliance with any of the terms of this Warrant are not and will not be adequate, and that such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by

an injunction against a violation of any of the terms hereof or otherwise.  Each of the parties agrees to perform such other and further acts as shall be necessary to effectuate the rights of the other party to this Warrant.

5. Deposit of Shares.

In order to secure his obligations hereunder, the Maker hereby agrees to take the following actions concurrently with the execution and delivery of this Warrant with respect to each certificate representing the Common Stock:

(i) To affix or cause to be affixed a legend on each certificate substantially to the following effect:

"UNLESS COUNTERSIGNED BELOW BY THE WARRANT HOLDER(S), THE SECURITIES EVIDENCED BY THIS CERTIFICATE ARE SUBJECT TO A WARRANT AND MAY NOT BE SOLD, TRANSFERRED, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF EXCEPT IN ACCORDANCE WITH THE TERMS OF THE WARRANT BETWEEN THE WARRANT HOLDER AND THE REGISTERED HOLDER HEREOF, A COPY OF WHICH AGREEMENT IS ON FILE AT THE PRINCIPAL OFFICE OF THE WARRANT HOLDER, PERMANENT PORTFOLIO FAMILY OF FUNDS, INC., 7 FOURTH STREET, SUITE 14, PETALUMA, CALIFORNIA 94952."

(ii) To deposit each such certificate, along with stock assignments executed in blank, with the designated custodian of the holder or holders hereof, State Street Bank and Trust Company, Boston, Massachusetts.

6. Assignment.

This Warrant may be assigned by the holder hereof.  Subject to the foregoing, this Warrant shall be binding upon and inure to

10

the benefit of the Maker, the holder hereof and their respective successors and assigns.

7. Notices.

All notices, requests, consents and other communications hereunder shall be in writing and shall be deemed to have been given when delivered or mailed first class postage prepaid or sent by confirmed facsimile transmission, at the respective addresses shown next to the signatures below, or at such other address as may have been furnished in writing by one party to the other.

8. Headings.

The headings of the Sections and subsections of this Warrant are inserted for convenience only and shall not be deemed to constitute a part of this Warrant.

IN WITNESS WHEREOF, the undersigned have executed this Warrant as of the date first above written.

"MAKER":

950 Greenhill Road
Mill Valley, CA  94941


ANDREW LAYMAN

"HOLDER":

7 Fourth Street, Ste. 14
Petaluma, CA  94952

PERMANENT PORTFOLIO FAMILY OF FUNDS, INC. – PERMANENT PORTFOLIO

By
Terry Coxon, President


Attest:
Alan M. Sergy,
Secretary

11