The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                      AT SEATTLE

10   ANDREW LAYMAN, a married man,        No. 2:05-cv-980 MJP

11              Plaintiff,                **DEFENDANT'S OPPOSITION TO
                                          PLAINTIFF'S MOTION FOR
12        v.                              PARTIAL SUMMARY JUDGMENT**

13   THE PERMANENT PORTFOLIO              **ORAL ARGUMENT REQUESTED**
     FAMILY OF FUNDS, INC., a Maryland    **Noted for Hearing: September 16, 2005**
14   Corporation,

15              Defendant.

16

17        Defendant, Permanent Portfolio Family of Funds, Inc. ("PPFF") files this

18   opposition to the Motion for Partial Summary Judgment ("Motion") filed by Plaintiff

19   Andrew Layman.

20               I.        **INTRODUCTION**

21        This case is about a disingenuous effort by Plaintiff Andrew Layman to avoid his

22   obligations under a Common Stock Purchase Warrant ("Warrant") entitling PPFF to

23   purchase certain shares of Symantec Corporation ("Symantec") stock.  Since PPFF sent

24   Mr. Layman a written Election to Exercise its rights to purchase the Symantec stock on

25   March 10, 2005, Mr. Layman has engaged in a bad faith effort aimed at frustrating the

26   ability of PPFF to obtain the Symantec shares.  Mr. Layman ignored or delayed responding

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 1
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    to efforts by PPFF to "close" the stock purchase in March 2005. Further, after PPFF was

2    advised by State Street Bank and Trust Company ("State Street"), the Custodian for PPFF

3    and the holder of the Symantec stock covered by Warrant, that PPFF could not take

4    possession of the shares until Mr. Layman delivered executed stock power forms, Mr.

5    Layman refused to comply with his obligation to provide such documents. In late March

6    2005, PPFF generated a check made payable to Mr. Layman for the purchase price of the

7    Symantec shares and waited for Mr. Layman to perform the acts necessary to facilitate the

8    closing of the stock purchase. Ultimately, Mr. Layman contacted PPFF and proposed a

9    "closing" date of May 12, 2005 – a date on which he was scheduled to be in or near San

10    Francisco, California, which is the location of the headquarters of PPFF.  Mr. Layman

11    filed the underlying lawsuit in state court two days before the scheduled closing date – May

12    10, 2005. PPFF removed the case to this Court, responded to Mr. Layman's Complaint,

13    and filed several counterclaims, including claims founded on equitable doctrines.

14        Now, Mr. Layman asks this Court to grant him partial summary judgment on the

15    ground that PPFF failed to provide him with the purchase price and the original Warrant on

16    or before a supposed "deadline." The Motion should be denied for several reasons.

17        First, Mr. Layman's contention that there are no undisputed facts concerning these

18    matters is groundless. Indeed, there are several material facts that are very much in

19    dispute. Most of these factual issues center on the manner in which the parties interpreted

20    the terms of the Warrant itself. In his Motion, Mr. Layman makes little mention of the

21    language of the Warrant. His disregard for the terms of the Warrant is not surprising, given

22    that the language of the Warrant, and the related conduct of the parties, undermines his

23    Motion. Significantly, the Warrant does _not_ state that the stock purchase must be closed on

24    or before April 6, 2005. In fact, the Warrant is silent or ambiguous regarding a "deadline"

25    for closing the stock purchase transaction once PPFF provides Mr. Layman with its

26    Election to Exercise. Moreover, the conduct of the parties strongly evidences that neither

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 2
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    Mr. Layman nor PPFF understood April 6, 2005 to be such a "deadline."

2          Mr. Layman's related assertion that the request by PPFF that he execute stock

3    power forms represents "a departure from procedure described in the Warrant" also is

4    disputed.  The Warrant contains explicit requirements (particularly at Articles 2.7, 4 and 5)

5    that obligate Mr. Layman to execute the stock powers.  PPFF's request that Mr. Layman

6    deliver the executed stock powers was entirely consistent with the obligations undertaken

7    and contemplated by the parties when the Warrant was executed.  Mr. Layman's apparent

8    contention that the Warrant permitted him to refuse to deliver the stock power forms and

9    avoid meeting with PPFF representatives to "close" the stock purchase transaction until

10   after a supposed "deadline," and thereupon, assert that the rights of PPFF under the

11   Warrant are extinguished, lacks merit.  Further, Mr. Layman's contention that PPFF drafted

12   the Warrant is disputed.  There is abundant evidence that Mr. Layman participated actively

13   in the preparation of the Warrant and that he was represented by counsel with respect to the

14   negotiation of the Warrant.

15         Second, the case law authority cited by Mr. Layman does not support his Motion.

16   In general, the cases cited by Mr. Layman merely stand for the proposition that the terms of

17   an option contract must be strictly complied with by the parties.  This general proposition

18   is not contested in the context of the instant Motion.  The authorities relied upon by Mr.

19   Layman, none of which arises on analogous facts, say nothing about whether Mr. Layman

20   performed his obligations under the Warrant and acted consistently with the agreement of

21   the parties.  Moreover, on close examination, the cases cited by Mr. Layman, support the

22   position of PPFF that PPFF timely exercised its rights under the Warrant and that Mr.

23   Layman is obligated to perform by delivering the stock powers and accepting the purchase

24   price.

25         Third, the Motion by Mr. Layman should also be rejected as premature because the

26   parties have not engaged in any discovery with respect to the material elements of this

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 3
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    dispute.  As described below, this dispute centers on questions related to certain

2    interactions and understandings of the parties, including understandings that are evidenced

3    by communications that occurred after PPFF sent Mr. Layman its written Election to

4    Exercise on March 10, 2005.  The evidence regarding those matters should be explored and

5    established during discovery.  Appropriate discovery will leave no doubt that PPFF (not

6    Mr. Layman) is entitled to summary judgment.  Nonetheless, for now, PPFF respectfully

7    submits that these questions should be deferred by the Court.

8                    **II.        COUNTERSTATEMENT OF FACTS**

9          PPFF is a registered investment company that consists of four separate mutual fund

10   portfolios, each with its own separate investment objective and policies.  PPFF currently

11   has approximately $ 400 million in total net assets.  The shares of PPFF are owned by

12   thousands of individual mutual fund investor accounts, including accounts held by Mr.

13   Layman and his wife.

14         In 1990, PPFF's former President and Chairman, Terrence Michael Coxon

15   ("Coxon"), in collaboration with his attorney, Richard Rolnick ("Rolnick"), Mr. Layman

16   and Mr. Layman's attorney, Mr. Epstein, conceived of the idea of a "deep-in-the-money

17   call option on [Layman's] low basis shares" in Symantec stock.  *See* Declaration of Lisa

18   Richman, filed herewith, ("Richman Decl.") at ¶¶ 5, 10 and Exhibits 4 and 9.  In addition

19   to his position at PPFF, Coxon and Terry Coxon, Inc., a corporation wholly owned by

20   Coxon, were the general partners of World Money Managers, investment adviser to PPFF

21   at the time.  Terry Coxon, Inc. had certain private investment advisory clients, including

22   Mr. Layman.  Coxon was interested in assisting Mr. Layman to formulate a deal whereby

23   Mr. Layman "raise[d] cash," "remove[d] the price risk of the [Symantec] stock from his

24   own portfolio" and "defer[red] recognition of gain" in order to avoid certain tax

25   consequences.  *See* Exhibit 4.  Coxon convinced the Board of Directors of PPFF that the

26   Warrant would be a good investment for PPFF, whereupon Coxon, Rolnick, Mr. Layman

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 4
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   and Mr. Layman's attorney, drafted the Warrant. *See* Exhibit 9. Mr. Layman is referred to

2   as the "Maker" of the Warrant and PPFF is referred to as the "Holder." *See* Exhibit A.

3         As consideration for the rights PPFF received under the Warrant, Mr. Layman

4   received 72.3% of the closing bid price of the Symantec stock on April 6, 1990, or

5   $329,400. The Warrant contemplated that he would receive an additional 55.6% of the

6   April 6, 1990 closing bid price upon purchase of the shares by PPFF under the Warrant.

7   *See* Exhibit A, Warrant at page 1. As contemplated under the terms of the Warrant, Mr.

8   Layman signed and delivered the stock power forms for the first 22,500 shares of Symantec

9   stock to State Street, PPFF's custodian.[1] *See* Exhibit 5 at Layman 000025, 000041. Under

10  the Warrant generally (and Article 5 in particular), Mr. Layman had an obligation to deliver

11  stock power forms for any additional shares created by a stock split or other corporate

12  transaction to State Street. *See* Exhibit A. He failed to do so despite PPFF's requests that

13  he do so. *See* Motion at 2; Declaration of Michael J. Cuggino, filed herewith, ("Cuggino

14  Decl.") at ¶¶ 3, 11, 12 and 16 and Exhibits J, L and M.

15        Article 2.2 of the Warrant states that upon any subdivision or dividend of the

16  underlying shares of Symantec stock, other than a cash dividend payable out of current

17  earnings, the "holder of [the] Warrant [PPFF] shall thereafter . . . be entitled . . . to

18  purchase" the additional shares created by such subdivision or dividend. Through stock

19  splits or other corporate transactions involving Symantec stock between 1990 and 2005,

20  the number of shares that PPFF was entitled to purchase under the Warrant had grown to

21  360,000. *See* Exhibit 1, Complaint at ¶ 8; Cuggino Decl. at ¶ 4 and Exhibit B. No later

22  than November 2004, PPFF indicated to Mr. Layman that it was interested in exercising its

23  rights under the Warrant. *See* Cuggino Decl. at ¶ 5 and Exhibit C. PPFF affirmed this

---

[1]  The stock power forms are referred to as "stock assignments" in the Warrant. The terms "stock power forms" and "stock assignments" are synonymous and will therefore be used interchangeably. Such forms have the same effect: to authorize the transfer of ownership.

1   interest in an email communication on March 8, 2005. *See* Cuggino Decl. at ¶ 6 and

2   Exhibit D. Between November 2004 and March 2005, the parties corresponded regarding

3   the shares and the Warrant, including discussions regarding stock certificates that were not

4   deposited with State Street until January 2005. *See* Cuggino Decl. at ¶¶ 4 and 5.

5        On or about March 10, 2005, PPFF transmitted to Mr. Layman its written Election

6   to Exercise the Warrant and purchase the full amount of Symantec stock that it was entitled

7   to purchase under the Warrant. The Election to Exercise stated that PPFF elected to

8   purchase from Mr. Layman 360,000 shares of Symantec stock at a purchase price per share

9   of $0.695 for an aggregate price of $250,200. The Election to Exercise also stated that the

10   closing date and time for the transaction would be March 25, 2005 at 4:00 p.m. (E.S.T.).

11   PPFF advised Mr. Layman that the purchase price would be paid and the Warrant

12   surrendered at the time of the closing and requested that Mr. Layman contact the President

13   of PPFF to coordinate the closing. *See* Cuggino Decl. at ¶ 7 and Exhibit E at Layman

14   000090. Mr. Layman never contacted PPFF to coordinate the closing. Nevertheless, on or

15   about March 15, 2005, Michael J. Cuggino ("Cuggino"), the President and Treasurer of

16   PPFF, contacted Mr. Layman by telephone to confirm his receipt of the Election to

17   Exercise. *See* Cuggino Decl. at ¶ 9 and Exhibit G. In addition, in an email communication

18   on or about March 23, 2005, PPFF notified Mr. Layman that State Street had informed

19   PPFF that Plaintiff must complete certain stock power forms for the Symantec shares

20   before the stock could be transferred into PPFF's name. *See* Cuggino Decl. at ¶ 10 and

21   Exhibit H. PPFF requested that Mr. Layman execute the stock power forms and return

22   them to State Street. *Id.* PPFF informed Mr. Layman that, after receipt of the stock power

23   forms, PPFF would surrender the Warrant and convey a certified check for the purchase

24   price to Mr. Layman. *Id.* PPFF was prepared to close the transaction on or about March

25   25, 2005 and had procured a certified check in the amount of the purchase price and the

26   original copy of the Warrant from State Street in order to effectuate the closing. Both of

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 6
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   these items were in PPFF's possession at its headquarters in San Francisco on or about

2   March 25, 2005. *See* Cuggino Decl. at ¶ 18 and Exhibit P.

3         Between March 23, 2005 and April 13, 2005, PPFF attempted, telephonically and

4   via email correspondence, to coordinate with Mr. Layman regarding his execution and

5   submission of the stock power forms required by State Street and to coordinate the closing

6   of the stock purchase transaction. *See* Cuggino Decl. at ¶ 11 and Exhibits J-K. Mr.

7   Layman responded on April 12, 2005, stating that he would not provide the forms until he

8   received a check. *See* Exhibit J at Layman 0000109. On or about April 13, 2005, PPFF

9   and Mr. Layman agreed that all remaining matters related to the stock purchase transaction

10  would occur at the same time, and that they would exchange the stock power forms, the

11  original Warrant and a certified check for the amount of the purchase price at a mutually

12  convenient time. *See* Cuggino Decl. at ¶ 12 and Exhibit L at Layman 000110-000113 and

13  Exhibit M. On May 4, 2005, the parties agreed that the closing of the stock purchase

14  transaction would occur at a May 12, 2005 in-person meeting between Mr. Layman and

15  Clement M. Wallace, the Secretary of PPFF, in Palo Alto, California. *See* Cuggino Decl. at

16  ¶ 13 and Exhibit N. There was additional correspondence regarding this meeting. *See*

17  Cuggino Decl. at ¶¶ 12, 14 and Exhibits L and O.

18        The closing never occurred, however, because Mr. Layman filed the Complaint in

19  this action on May 10, 2005. At no time prior to May 10, 2005, did Mr. Layman assert

20  that he was not obligated to provide the signed stock power forms required by State Street.

21  *See* Cuggino Decl. at ¶ 15. Further, at no time prior to May 10, 2005, did Mr. Layman

22  allege that PPFF had failed to exercise properly and timely its option to purchase the

23  Symantec stock under the Warrant. *Id.*

24                       **III.**        **ARGUMENT**

25  **A.**    **The Summary Judgment Standard.**

26        Plaintiff is entitled to summary judgment only if he can "show that there is no

1    genuine issue as to any material fact and that [he] is entitled to judgment as a matter of

2    law." Fed. R. Civ. P. 56(c). *See also Assurance Co. of America v. Wall & Assoc. LLC of*

3    *Olympia*, 379 F.3d 557, 560 (9th Cir. 2004); *Score LLC v. Shoreline*, 319 F. Supp. 2d

4    1224, 1228 (W.D. Wash. 2004). As the moving party, Plaintiff "bears the initial burden of

5    demonstrating the absence of a genuine issue of material fact." *Score*, 319 F. Supp. 2d at

6    1228 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Additionally, the facts

7    submitted in the record, and all reasonable inferences to be derived from them, shall be

8    considered in the light most favorable to PPFF. *Gray v. Pierce County Housing Authority*,

9    123 Wash. App. 744, 751, 97 P.3d 26, 28 (2004) (citing *Wood v. Battle Ground Sch. Dist.*,

10   107 Wash. App. 550, 557 (2001)).

11          Mr. Layman fails to meet the summary judgment standard in all respects. As

12   reflected above, Mr. Layman's view of the facts differs in virtually every material respect

13   from that of PPFF. These marked disputes require that the Court deny Plaintiff's Motion.

14   **B.    Mr. Layman's Primary "Facts" Are Disputed.[2]**

15          In his Motion, Mr. Layman offers four primary "undisputed facts" in an attempt to

16   deflect his responsibility for delaying the closing of the transaction. None of these facts is

17   undisputed as Mr. Layman contends.

18          First, Mr. Layman claims that the Warrant was "drafted by the Fund." *See* Motion

19   at 2. (citing the Complaint at ¶ 4 and the Counterclaim at ¶ 7). In doing so, he purports to

20   rely on the Complaint and the Counterclaim; however, neither of those pleadings supports

21   his contention. PPFF contests this claim, and offers numerous documents that contradict

22   it:

23   •   Letter, dated February 28, 1990, from Mr. Layman to Coxon reflecting revisions he

24   _____

25   [2] PPFF's Counterclaim asserts four distinct counts, or causes of action, against Mr. Layman. In a footnote at the beginning of his Motion, Mr. Layman acknowledges that he has not addressed all of these counts and is seeking summary judgment on the single issue of adequacy of notice under the Warrant. Motion at 2, note 1.

26

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 8
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    wanted to the Warrant.  Richman Decl. at ¶ 10 and Exhibit 9 at Layman 000002-

2    000004.

3    • Letter, dated March 13, 1990, from Rolnick to Mr. Layman reflecting

4       communications about the draft of the Warrant.  Richman Decl. at ¶ 10 and Exhibit

5       9 at Layman 000005- 000006.

6    • Facsimile from Mr. Layman to Coxon regarding "finishing" the Warrant. Richman

7       Decl. at ¶ 10 and Exhibit 9 at Layman 000023.

8    • Facsimile from Mr. Layman to Rolnick regarding revision.  Richman Decl. at ¶ 10

9       and Exhibit 9 at Layman 000024.

10   • Warrant, dated April 6, 1990, stating that Mr. Layman is the "Maker" of the

11      agreement and PPFF is the "Holder" of the agreement.  Cuggino Decl. at ¶ 3 and

12      Exhibit A.

13       This record establishes that Mr. Layman not only materially contributed to the

14  drafting of the Warrant but, in fact, made several and substantial changes to it.  *See*

15  Richman Decl. at ¶ 10 and Exhibit 9.  Moreover, Mr. Layman was represented by counsel

16  in all matters related to the negotiation and drafting of the Warrant.  *Id.*

17       Second, Mr. Layman claims that the Warrant clearly states that the Warrant could

18  only be exercised by providing the purchase price and surrendering the original Warrant by

19  "the April 6, 2005 deadline." *See, e.g.,* Motion at 3.  Plaintiff's repeated references to the

20  April 6, 2005 date as a "deadline," *see, e.g.,* Motion at 1-4 and 9, are unavailing.  The

21  Warrant contains no such deadline.  Indeed, Article 1.2 of the Warrant entitled "Method of

22  Exercise" contains no requirement of payment, no reference to any deadline, and no

23  mention of any date, let alone April 6, 2005.  *See* Exhibit A, Warrant at page 2-3.  Contrary

24  to Mr. Layman's assertions, payment of the purchase price and surrender of the Warrant

25  were therefore not conditions precedent to his obligation to deliver the required stock

26  power forms and close the stock purchase transaction contemplated by the Warrant.

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 9
291/487696.01
090805/1916/62316.00001

Riddell Williams p.s.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98164-1192
(206) 624-3600

1    The only mention of the April 6, 2005 date is in the introductory section of the

2    Warrant. *See* Exhibit A, Warrant at page 1-2. That section contains two references to a

3    specific date, the first of which states that "[u]pon lapse of this Warrant or failure to

4    exercise prior to April 6, 2005, the parties agree that the Warrant will have no further force

5    or effect." Exhibit A, Warrant at page 2. The Warrant also states that PPFF "is entitled,

6    subject to the terms and conditions hereinafter set forth, at any time on or after the date

7    hereof to and including April 6, 2005, to purchase from time to time up to 22,500 shares of

8    unrestricted Common Stock . . . of Symantec Corporation." Exhibit A, Warrant at page 1.

9    However, Mr. Layman's contention that the Warrant provides that PPFF must "tender [the

10   purchase price and the original Warrant] to Layman prior to the April 6 deadline" is simply

11   erroneous.

12       PPFF further contests this "fact" because the communications and documents

13   exchanged by the parties contradict the notion that either party intended or considered

14   April 6, 2005 to be a "deadline" for closing the stock purchase transaction. *See* Cuggino

15   Decl. at ¶¶ 11-14 and Exhibits J-O; Richman Decl. at ¶ 10 and Exhibit 9. In particular,

16   after April 6, 2005, the parties continued to communicate regarding the closing. Thus, Mr.

17   Layman's perception that the April 6 date was a "deadline" apparently was formed at some

18   time after April 6. As discussed below, PPFF maintains that the Warrant is clear and

19   unambiguous that the closing did not need to occur before April 6, 2005, but could occur

20   within a reasonable time of exercise. Instead, notice was the only matter which PPFF

21   admits needed to (and did) occur before April 6, 2005. At best, the Warrant is ambiguous

22   with regard to what actions needed to occur before April 6, 2005. In any event, the timing

23   element of the Warrant and the requirements for exercise thereunder are clearly in dispute.

24   PPFF was, at all times, prepared to purchase the shares on or after March 25, 2005, that is,

25   within a "reasonable" time period. *See* Cuggino Decl. at ¶ 18 and Exhibit P.

26       Third, Plaintiff claims that PPFF's request that Mr. Layman execute power of

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 10
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   attorney forms "was a departure from procedure described in the Warrant." *See* Motion at

2   4, note 2. Once again, PPFF disagrees. In fact, the Warrant contemplates that

3   "assignments executed in blank" will be completed for each stock certificate, *see* Exhibit

4   A, Warrant at page 10, Article 5, and that Mr. Layman will "assist in the carrying out of all

5   [the terms of the Warrant] and [will] tak[e] . . . all such action as may be necessary or

6   appropriate in order to equitably protect the rights of the holder or holders." *See* Exhibit A,

7   Warrant at page 9, Article 2.7. Mr. Layman breached these provisions by failing to assist

8   in carrying out the terms of the Warrant, by failing to respond timely to PPFF's Election to

9   Exercise its rights to purchase the Symantec stock, by failing to execute the stock power

10   forms required by State Street to effect the purchase by PPFF, by delaying the closing of

11   the stock purchase transaction and by refusing repeated requests by PPFF for his assistance

12   in completing the transaction. The Warrant also provides that "[e]ach of the parties agrees

13   to perform such other and further acts as shall be necessary to effectuate the rights of the

14   other party to this Warrant." Exhibit A, Warrant at page 10, Article 4. Mr. Layman

15   breached Article 4 of the Warrant because he failed to perform acts "necessary to

16   effectuate" PPFF's rights to purchase the Symantec stock.

17        Significantly, Mr. Layman never disputed prior to May 10, 2005, that he was

18   obligated to provide the required stock power forms. Mr. Layman's delay in executing the

19   forms was one of the factors that deferred the closing date. While the Warrant did not

20   specify when the stock power forms were supposed to have been completed, it did

21   contemplate that Plaintiff would "perform . . . acts as shall be necessary to effectuate the

22   rights of the other party to this Warrant." Exhibit A, Warrant at page 10, Article 4. The

23   execution and delivery of the stock power forms was clearly something that was "necessary

24   to effectuate" PPFF's right to purchase the stock.

25        Finally, Mr. Layman's argument that his execution of the stock power forms

26   "would have put the Fund in legal control of the stock certificates before the Fund had fully

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 11
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   paid the Purchase Price" is incorrect and inapposite. *See* Motion at 4, note 2.  PPFF and

2   Mr. Layman agreed to exchange the power of attorney forms and the purchase price and

3   original Warrant at the closing. *See* Cuggino Decl. at ¶ 12 and Exhibit L.  This obviated

4   any theoretical concern that PPFF would attempt to procure control of the stock without

5   proper payment.

6   **C.      Plaintiff's Case Citations Are Inapposite and Unavailing.**

7             None of the cases cited by Mr. Layman supports his view of how the Warrant

8   should be interpreted or the instant Motion.  In particular, Mr. Layman primarily relies on

9   cases that are not analogous to the facts of this case.  The cases cited by Mr. Layman

10  generally stand for the proposition that an optionee must strictly comply with the terms of

11  an option contract. *See* Motion at 6-7.[3]  PPFF does not dispute this broad principle.

12  However, these cases do not address the central issues in this case.  All of Mr. Layman's

13  case citations are readily distinguishable for the reasons set forth below.

14            **1.      PPFF Strictly Complied with the Terms of the Warrant.**

15            As noted, Mr. Layman cites a number of cases for the principle that the terms of an

16  option contract must be strictly followed. *See* Motion at 6-7 (citing *Palo Alto Town &*

17  *Country Village, Inc. v. BBTC Company*, 11 Cal. 3d 494, 521 P.2d 1097 (1974); *State ex*

18  *rel Carriger v. Campbell Food Markets, Inc.*, 65 Wash. 2d 600, 398 P.2d 1016 (1965);

19  *Gatley v. Shockley*, 215 Cal. 604, 12 P.2d 436 (1932); *Wilson v. Ward*, 155 Cal. App. 2d

20  390, 317 P.2d 1018 (1957); *Andersen v. Brennen*, 181 Wash. 278, 43 P.2d 19 (1935)).

21  Significantly, Plaintiff dedicates little attention or analysis to the facts or underlying legal

22  principles addressed in these cases.  A more thorough examination of the holdings in these

23  cases reveals that they are uniformly unavailing to Mr. Layman.

24  ---

[3] PPFF agrees with Mr. Layman's contention that California and Washington substantive law are consistent
25  with respect to the issues related to this Motion.  PPFF does not concede any choice of law issues, however.
Because the Court need not reach any determination on choice of law in order to decide the Motion, PPFF
26  respectfully reserves the right to raise any choice of law issues at a later time.

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 12
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    For instance, *Palo Alto* primarily deals with two issues, neither of which is relevant

2    to the present dispute. The first is whether notice is effective upon receipt or upon

3    dispatch. This matter is not at issue because the parties do not dispute that PPFF provided

4    to Mr. Layman a timely Election to Exercise. The second issue is what means an optionee

5    may use to provide notice when the contract does not contain specific terms. The court

6    spends the majority of its opinion discussing why the terms of the option were not clear

7    and evaluating whether the optionee's notice was sufficient. The court holds that, under

8    California statutory law, written notice by regular mail sufficiently complies with an option

9    that does not clearly describe how the optionee should effectuate notice. This holding does

10   not speak to the issues presented by the Motion.

11   In *Carriger*, the issue was whether an acceptance that was conditional on terms

12   outside of the option converted the acceptance into a counteroffer. The court held that an

13   acceptance must be on the same terms as contained in the option. *Carriger* is not relevant

14   to this case because PPFF's request – that Mr. Layman execute the stock power forms –

15   was not a condition outside of the Warrant. In fact, Mr. Layman agreed that he was

16   required to execute these forms, without which PPFF could neither convert the shares, nor

17   take possession of them, as contemplated by the Warrant. Cuggino Decl. at ¶ 10.

18   Moreover, Mr. Layman was required, by the terms of the Warrant, to complete these forms.

19   See Exhibit A, Warrant at pages 9-10, Articles 2.7, 4 and 5. For these reasons, *Carriger* is

20   irrelevant.

21   In *Gatley*, much like in *Carriger*, the optionee violated the explicit terms of the

22   option by attempting to assign the option to another company. Additionally, the optionee

23   failed to make a deposit as called for in the option. *See Gatley*, 215 Cal. at 608-09, 12 P.2d

24   at 438. The option set forth that a $5,000 deposit was to be paid at a particular time and

25   then specified how the remainder of the purchase price was to be paid. This case, like *Palo*

26   *Alto* and *Carriger*, is inapplicable for factual reasons. The *Gatley* court, in finding that the

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 13
291/487696.01
090805/1916/62316.00001

1   optionee had tendered improperly, relied on the fact that the optionee attempted to

2   construct a "sham transaction" because the optionee, a company, was defunct when it

3   attempted to tender. Instead, another company provided the funds for the deposit. Unlike

4   in *Gatley*, the Warrant contains no requirement regarding the payment of any deposit

5   beyond the consideration that PPFF paid, in 1990, to obtain its rights under the Warrant. In

6   addition, PPFF has not attempted to thwart any of the contractual provisions, unlike the

7   optionee in *Gatley*.

8        The optionee in *Wilson* argued that his failure to provide the purchase price by the

9   date set forth in the option was not a "belated attempt to exercise the option . . . but merely

10  a demand for performance" of the optionor. *Wilson*, 155 Cal. App. 2d at 394, 317 P.2d at

11  1020. The court held that the option was contingent on the payment of a sum certain by a

12  particular date in light of contractual terms that stated: "If the said payment of $6,500.00 is

13  not paid or tendered <u>on or before the First day of May, 1954</u>, then this contract [is] to be

14  void and of no effect, and both parties released from all obligations herein." *Id.,* 155 Cal.

15  App. 2d at 395, 317 P.2d at 1021 (emphasis added). Because that condition precedent

16  never came about, the option became void and the parties were released from their

17  obligations. The court explicitly states that the optionee's payment was made an "essential

18  condition to the exercise of the option." *Id.* Unlike in *Wilson*, payment of the purchase

19  price was not an "essential condition" of the exercise of the Warrant.[4] Indeed, as noted

20  above, the Warrant is silent with respect to the date by which payment must be made by

21  PPFF.

22       The *Wilson* court cites two cases, *Cates v. McNeil*, 169 Cal. 697, 147 P.2d 944

23  (1915) and *Murfee v. Porter*, 96 Cal. App. 2d 9, 214 P.2d 543 (1950), that are particularly

24  _____
    [4] Significantly, *Wilson* is further distinguished from this case because PPFF did not delay in exercising under
25  the Warrant, unlike the optionee in *Wilson*. Any delay in executing the closing was attributable to inattention
    or non-responsiveness on the part of Mr. Layman or the parties' agreement to "close" the stock purchase
    transaction on May 12, 2005. *See* Cuggino Decl. at ¶ 11.
26

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 14
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  helpful in examining when a condition is "essential" to an option.  In both of these cases,

2  the court held that payment was not an essential condition.  Unsurprisingly, despite the fact

3  that *Cates* and *Murfee* are far more analogous to the present dispute, Plaintiff cites neither

4  of these opinions.

5         In *Cates* the lessee-optionee was granted an option to purchase real property within

6  a specified time period.  Before that period ended, the optionee served written notice of its

7  intent to purchase and a willingness to pay the price set forth in the contract.  The optionor

8  did not object to the notice, but refused to execute the purchase.  The court held that

9  payment of the purchase price was not an explicit part of the conditions required in order to

10  exercise the option, despite the fact that the option gave the optionee the right to purchase

11  the leased premises for a certain price per acre by a certain date.  Payment, according to

12  the court, was not an "essential condition" to the exercise of right.  *Cates*, 169 Cal. at 705-

13  06, 147 P.2d at 947-48.  The court stated that while payment would be required before the

14  optionee would be entitled to conveyance of the property, payment pertained to the

15  "performance of the contract" and not to the "acceptance."  *Id.*  Instead, the court

16  concluded that the optionor and optionee must perform the "mutual and dependent

17  covenants" related to the purchase, including conveyance of the purchase price, within a

18  "reasonable time" after the contract for sale is created by acceptance of the option. *Cates*,

19  169 Cal. at 706-07, 147 P.2d at 948.

20         Here, as in *Cates*, the terms of the Warrant do not explicitly require payment as a

21  condition to exercise.  Instead, the payment of the purchase price and surrender of the

22  Warrant pertain to the closing of the purchase and not to "exercise" or "acceptance."  Mr.

23  Layman's assertion to the contrary is not supported by fact or law.  Additionally, contrary

24  to Mr. Layman's strained contentions, PPFF made no extra-contractual requests in the

25  election or at any later time.  Like the optionee in *Cates*, PPFF made requests relating to

26  the performance of the option and Mr. Layman's contractual obligations, after the

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 15
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   unconditional notice had been transmitted.

2       In *Murfee*, the court discusses another relevant issue – the problem of determining

3   the parties' intent when an option contract confers an option which must be exercised

4   before a specific time, but is silent about the exact time required for the tender or payment

5   of the purchase price. The *Murfee* court observed that one of the "generally accepted legal

6   principles," is that "payment or tender is not essential unless it is a condition precedent,"

7   and that "if no time is specified the acceptance must be within what is a reasonable time

8   under the circumstances of the particular case. The principle that time is of the essence of

9   an option generally applies only to acceptance and not to performance." *Id.*, 96 Cal. App.

10  2d at 18, 214 P.2d at 549 (citations omitted).[5]

11      The circumstances here are analogous to those in *Murfee*. Although there was a

12  general date specified in the Warrant, the instructions regarding exercise did not contain

13  any specific requirement that the purchase price be paid on or before a date certain, nor did

14  the section of the Warrant referring to April 6, 2005 explicitly state that the purchase must

15  be completed by that date. *See* Exhibit A, Warrant at pages 2-3, Article 1.2. Thus,

16  payment of the purchase price and surrender of the original Warrant were not made

17  "essential conditions" to the right to exercise.[6]      The parties' intent under a contract is

18  determined from the language of the contract and from the surrounding circumstances,

19  including the "subsequent acts and conduct of the parties to the contract." *Scribner v.*

20  *Worldcom, Inc.*, 249 F.3d 902, 907-08 (9th Cir. 2001) (applying Washington law) (internal

21

22  [5] The *Murfee* court distinguishes two cases, one of which is cited by Plaintiff to support the notion that strict
23  compliance requires more than "mere" notice. *See Mariposa Commercial & Mining Co. v. D. L. Peters*, 215
    Cal. 134, 8 P.2d 849 (1932). *Murfee* distinguishes *Mariposa* on the basis that the *Mariposa* option contains
    two separate and specific dates, one for the notice of election and one for tender of the purchase price.

24  [6] *See also Erich v. Granoff*, 109 Cal. App. 3d 920, 928-29 (1980) ("[I]t is generally recognized that payment
25  of the purchase price in an option contract is, unless otherwise stated in the contract, an obligation to be
    performed by the optionee in his performance of the conditions of the bilateral contract of purchase and sale
26  which is formed upon the exercise of the option.").

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 16
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   quotation omitted).  Here, the parties' intent is clear from both the language of the Warrant

2   and from the parties' actions after PPFF provided its written Election to Exercise.  The

3   parties intended for the contract to close within a reasonable time after notice was

4   provided, but there was no strict requirement that the closing occur before April 6, 2005, as

5   is exhibited by Plaintiff's continued correspondence with PPFF regarding the closing date

6   up to and until the Complaint was filed on May 10, 2005.[7]  *See* Cuggino Decl. at ¶¶ 11-14

7   and Exhibits J-O.  Plaintiff never expressed that PPFF had missed the date for payment.

8   Instead, his only focus appeared to be whether or not the power of attorney forms needed to

9   be transferred before or after payment was received.  *Id.*

10        *Andersen* is also distinguishable.  In *Andersen*, the option concerned a stock

11   repurchase agreement, which contemplated that, upon ninety days prior notice of the

12   optionee, the optionor would repurchase 110 shares of stock that optionee received in an

13   earlier transaction with optionor.  The option stated that the contract would continue for

14   three years from the date of the original written agreement, April 8, 1929.  The optionee

15   argued that he had given the optionor written notice on April 6, 1932 or, in the alternative,

16   had given oral notice on March 26, 1932, of his intent to exercise the option.  The court

17   held that the optionor was obligated to purchase the stock "at any time within the three year

18   period, provided that, within that period, the appellant had given ninety days notice of his

19   election."  *Andersen*, 181 Wash. at 281, 43 P.2d at 21.  The court also held that the "ninety

20   day notice was a condition precedent to appellant's right of action for specific

21

---

22   [7] Under Washington and California law, the purchase could be consummated within a reasonable time,
23   without running afoul of the terms of the Warrant.  *See, e.g., Duprey*, 52 Wash. 2d at 134, 323 P.2d at 906;
     *Murfee*, 96 Cal. App. 2d at 17, 214 P.2d at 549.  "If the condition is only that notice shall be given within a
24   certain time, and no time is specified for the making of payment, a delay in paying is not fatal to the option
     holder.  When option contracts do not explicitly require payment of the purchase price as a condition
25   precedent to exercise of the option, such agreements simply require a promise by the option holder to pay the
     price (and not actual payment) and intend performance to be completed thereafter within a reasonable time."
26   3 Corbin on Contracts § 11.14 and notes 20 & 21 at page 616 (West 1996 & 2005 Supp.) (emphasis added).

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 17
291/487696.01
090805/1921/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  performance." *Id.*[8]  Clearly, the current action can be distinguished on the basis that PPFF,

2  contrary to the optionee in *Andersen*, did give notice within the prescribed period.  Even

3  assuming the facts in the light most favorable to Plaintiff, PPFF would have had to serve

4  Mr. Layman with notice fourteen (14) days before April 6, 2005.  In fact, PPFF served

5  Plaintiff with notice twenty-seven (27) days before April 6, 2005.  Therefore, unlike the

6  optionee in *Andersen*, PPFF did not fail to perform any conditions precedent to its rights

7  for specific performance.

8          Furthermore, in contrast to the optionor's actions in *Andersen*, Mr. Layman did not

9  reject PPFF's tender under the Warrant.  Instead, Plaintiff's responses to PPFF's email and

10  telephonic communications gave every indication and assurance that the purchase would

11  close on May 12, 2005.  *See* Cuggino Decl. at ¶¶ 13-14 and Exhibits N-O.  To PPFF's

12  surprise, on May 10, 2005, Plaintiff for the first time claimed that PPFF should have

13  provided the purchase price and surrendered the original Warrant before April 6, 2005.  *See*

14  Cuggino Decl. at ¶ 15; Exhibit 1, Complaint at ¶ 14.  Assuming for the sake of argument

15  that Plaintiff is correct and PPFF's tender of exercise was insufficient under the terms of

16  the Warrant, Mr. Layman has waived improper notice by virtue of his failure to permit

17  PPFF an opportunity to cure any alleged defect in its tender.  *See, e.g., Rollins v. Stokes*,

18  123 Cal. App. 3d 701, 713 (1981) ("If an optionor does not specify the alleged defects in

19  the tender by the optionee, then a waiver results. . . . The reason for this rule is that an

20  optionee should be able to remedy any defects in his tender and prevent the optionor from

21  remaining silent at the time of the tender and later surprise the optionee with hidden

22  objections.") (citation omitted); *Collins v. Marvel Land Co.*, 13 Cal. App. 3d 34, 40 (1970)

23  ───────────────

24  [8] Despite being decided more than 70 years ago, *Andersen* has been cited only twice in relevant jurisdictions. *See Paul v. Christensen Family Trust*, 2005 Wash. App. LEXIS 1876 (July 26, 2005) and *In re Kofoed*, 46 F.

25  Supp. 118 (D. Wash. 1942).  Neither of these cases, nor *Andersen* itself, truly supports the suggestion Plaintiff posits that "failure to complete transaction within the time of the option resulted in option terminating." Motion at 6; *see also* Motion at 8, note 4.  Instead, these cases support that "time is of the essence" and that notice must be given timely. *Paul*, 2005 Wash. App. LEXIS 1876, at *8; *In re Kofoed*, 46

26  F. Supp. at 120.

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 18
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  ("The acceptance of the exercise of the option without objection to the form of the exercise

2  waives any objection to the form of the exercise.") (citations omitted); *Lawrence v. Settle*,

3  182 Cal. App. 2d 386, 388 (1960) (even if oral exercise of the option was ineffective,

4  optionor by his conduct waived this defect because he did not object to the form of the

5  offer, despite his refusal to accept the offer).[9]  For this additional reason, *Andersen* is

6  unavailing to Plaintiff.

7      **2.    The Notice by PPFF Was Sufficient.**

8      Plaintiff cites additional authorities to support the contention that when an option

9  requires the performance of certain actions in order to effectuate exercise, "mere notice" of

10  the intent to exercise is "insufficient and the option will terminate." *See* Motion at page 6

11  (citing *Fabares v. Benjamin*, 180 Cal. App. 2d 264 (1960); *Mariposa Commercial &*

12  *Mining Co. v. D. L. Peters*, 215 Cal. 134, 8 P.2d 849 (1932)).  These cases also are

13  irrelevant and unavailing.

14      In *Fabares*, the parties disputed whether an option regarding the sale of real

15  property clearly required that as a "condition to exercise" the optionee was required to pay

16  the optionor $58,500, as partial payment for a debt that was outstanding to the optionor.

17  The optionee did not dispute that he failed to pay the money to the optionor, but argued

18  that it was not a condition to exercise and, instead, that notice of exercise was sufficient.

19  The court stated that by "clear and unmistakable language" the payment of the $58,500 was

20  required as a "prepayment" in order to exercise the option. *Fabares*, 180 Cal. App. 2d at

[9] *See also* 3 Corbin on Contracts § 11.8 at page 524 ("Even if an option is given or an offer is made in such terms that acceptance is to be by actual payment and not by mere notice, it may still be clear that conveyance and payment are intended to be concurrent . . . . The vendor will be held bound if the purchaser gives notice of acceptance and offers to produce the money in exchange for the deed, then having the necessary funds in the bank to cause the purchaser's check to be honored.").  PPFF was prevented from closing the transaction because of Plaintiff's delay tactics and the filing of this lawsuit.  Mr. Layman's actions should not be permitted to prejudice PPFF.  Because, as set forth in Plaintiff's Motion, Plaintiff is seeking summary judgment only on PPFF's claim that the Election to Exercise constituted exercise under the Warrant, PPFF will not address this argument, nor will PPFF address any of its other counterclaims, as Plaintiff has agreed, these are dependent on the consideration of disputed facts.  PPFF reserves the right to seek a determination as to these issues at a later time.

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 19
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    270. Moreover, the court noted that well in advance of the exercise date, the optionor's

2    attorney sent a letter to the optionee specifying the defective notice and stating that the

3    optionee must, "as a condition precedent to exercise, pay the $58,500." *Id.* at 271.  In

4    contrast to *Fabares*, the language in the Warrant is not "clear and unmistakable" that the

5    purchase price is a "condition to exercise" and must be paid and the Warrant surrendered

6    on or before April 6, 2005.  Moreover, unlike the optionor in *Fabares*, Plaintiff did not

7    notify PPFF that it had insufficiently exercised.

8       *Mariposa*, a case that Plaintiff claims "mirrors the circumstances here," (*see*

9    Motion at 7) concerned a real estate contract that contained two explicit and distinct dates,

10   one for notice of election (November 25, 1929) and the other for the effectuation of

11   purchase (November 30, 1929).  The court held that the optionee failed to tender the

12   purchase price, as contemplated by the option, by November 30, 1929, that the optionee

13   was in default of other provisions of the option and that, therefore, the optionee failed to

14   comply with the terms of the option whereupon it terminated.  The facts of *Mariposa* quite

15   obviously do not mirror the circumstances of this case.  Unlike the optionee in *Mariposa*,

16   PPFF did not fail to comply with the terms of the Warrant.  PPFF properly gave notice

17   within the appropriate timeframe.  The absence of a provision in the "Method of Exercise"

18   section of the Warrant specifying that the purchase price must be paid and the Warrant

19   surrendered on or before a date certain distinguishes *Mariposa*, in which there was such a

20   condition.  In addition, unlike in *Mariposa*, the section of the Warrant regarding exercise

21   does not clearly specify two separate dates for notice and effectuation of the purchase.

22      **3.   PPFF is Not Seeking to Extend the Deadline of the Warrant.**

23      Contrary to the suggestion by Plaintiff, PPFF is not attempting to extend the option

24   embodied by the Warrant.  Indeed, as Plaintiff was well aware, PPFF was prepared to

25   release the certified check for the purchase price and surrender the original Warrant before

26   April 6, 2005.  *See* Cuggino Decl. at ¶ 18 and Exhibit P.  Notice was provided within the

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 20
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    time period provided for in the Warrant.  Plaintiff may not complain at this late date that a

2    provision that he had a significant hand in drafting should be construed differently than the

3    parties intended and than his own actions portended.  *See* Richman Decl. at ¶ 10 and

4    Exhibit 9.[10]

5         The cases relied upon by Plaintiff in this area also are readily distinguished.  *See*

6    Motion at 7 (citing *Simons v. Young*, 93 Cal. App. 3d 170, 155 Cal Rptr. 460 (1979);

7    *Wilson v. Ward*, 155 Cal. App. 2d 390, 317 P.2d 1018 (1957); *Gray v. Lipscomb*, 48 Wash.

8    2d 624, 296 P.2d 308 (1956)).[11]  In *Simons*, the lessee-optionee had a lease that he was

9    required to renew in writing within a specific time period.  After that time period had

10   lapsed, the lessor and successor to the optionor, notified the optionee that his option had

11   lapsed.  Optionee thereafter attempted to renew the lease.  Upon lessor's refusal to accept

12   notice, optionee filed an action requesting specific performance and equitable relief.  The

13   optionee acknowledged that he failed to provide written notice within the period specified

14   in the option.  The court held that it could not extend the option period and that it could not

15   grant the optionee equitable relief when the optionee's "failure to exercise the option

16   resulted entirely from his own neglect or forgetfulness and was not contributed to by

17   lessors." *Simons*, 93 Cal. App. at 188, 155 Cal. Rptr. at 472.  Clearly, *Simons* is unlike the

18   current situation.  Unlike the optionee in *Simons*, PPFF did not neglect or fail to exercise

19   its rights under the Warrant.  In addition, PPFF has not requested that the Court relieve it of

20   ---

[10] Washington law clearly supports this contention.  *See, e.g., Duprey*, 52 Wash. 2d at 134, 323 P.2d at 906.
In *Duprey*, the Washington Supreme Court held that when an option contract stated that the lessee-optionee
had a "right and option to purchase [a parcel of] real estate at any time within the term of this lease for a total
purchase price of $12,500 in cash," this did not necessitate that the purchase price be tendered at the time of
the exercise.  Instead, "[w]hen, as here, no time is specified in the option agreement for final payment and
delivery of the instruments of conveyance, the time of payment and delivery is a reasonable time after
acceptance of the offer . . . .  There is a distinction between an acceptance of an offer to purchase and the
closing of a sale, after the option has been exercised.  The acceptance of an offer to sell . . . creates a binding
obligation on both parties.  The closing of the sale thereafter is the fulfillment of the obligations created by
the contract." *Id.* (citation omitted).

[11] Although it is not within the scope of this motion, PPFF's waiver argument applies to this contention as
well.  Again, PPFF reserves the right to raise this argument at a later time.

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 21
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   any requirements under the Warrant. Finally, PPFF has not requested additional time to

2   exercise its rights under the Warrant. PPFF timely and effectively delivered its Election to

3   Exercise on March 10, 2005. Mr. Layman was aware that PPFF was willing and able to

4   complete the purchase on or after March 25, 2005. Therefore, the holding in *Simons* is

5   irrelevant.

6          As discussed above, *Wilson* is also distinguishable. The optionee in *Wilson* sought

7   an extra three days to comply with the terms of the option. PPFF did not seek additional

8   time to perform its obligations. Instead, PPFF timely exercised its rights under the

9   Warrant. If anyone sought additional time to comply it was Plaintiff, who failed to execute

10  and deliver the required stock power forms and failed to assist in closing the stock

11  purchase transaction, as required under the Warrant. *See* Cuggino Decl. at ¶¶ 4, 16 and

12  Exhibit B.

13         In *Gray*, the terms of the option set forth clearly and explicitly that the optionee

14  would be permitted to purchase a parcel of property on one particular day. The optionee

15  failed to exercise on the appointed day and sought to enforce the option by virtue of

16  estoppel based upon the fact that he had a "confidential relationship" with the optionor that

17  entitled him to expect that the optionor would not seek to strictly enforce the terms of the

18  option. The court held, among other things, that the optionor "did not make any

19  representations of fact in regard to the terms of the option, nor promise to enlarge its

20  duration" and that the optionees "were in no way induced to forgo action upon the option

21  by the statements of the [optionor]" on the basis that one of the optionees admitted that he

22  had "forgotten the terms of the option and that it had to be exercised on September 30,

23  1954." *Gray*, 48 Wash. 2d at 627, 296 P.2d at 310. The court concluded that "no estoppel

24  arises from these facts." *Id*. Contrary to *Gray*, PPFF did not sit on its rights and simply

25  forget to exercise its option under the Warrant. Instead, PPFF clearly provided proper and

26  timely written notice and relied on Plaintiff's representations and agreements with respect

1   to the closing.  Unlike the optionor in *Gray*, who immediately notified optionee that its

2   notice was ineffective, Plaintiff never notified PPFF that its notice was ineffective and gave

3   every indication that he was prepared to close the transaction on May 12, 2005.

4   **D.    In the Alternative, the Motion Should be Denied Because Rule 56(f) Requires
          that PPFF Be Allowed To Take Discovery.**

5

6          A fourth, and equally meritorious, ground for denying the Motion is that it is

7   premature.  This case was filed on May 10, 2005.  Last month, the parties filed a Joint

8   Status Report setting forth the time for discovery and other matters.  Plaintiff's Motion for

9   Summary Judgment was filed not only before the completion of discovery, but also prior to

10  the onset of discovery.

11         This is the paradigm case for application of Fed. R. Civ. P. 56(f), which authorizes

12  the denial of a motion for summary judgment where the party opposing the motion has not

13  had an opportunity to complete discovery relating to the subject matter of the summary

14  judgment motion.  *Burlington Northern Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes*,

15  323 F.3d 767, 773 (9th Cir. 2003) ("Where . . . a summary judgment motion is filed so

16  early in the litigation, before a party has had any realistic opportunity to pursue discovery

17  relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly

18  freely.").[12]  The discovery period in this action only recently commenced, and neither of the

19  parties have served discovery requests.  Those requests likely will address many of the

20  disputed factual matters that are discussed in the Motion and this Opposition Brief.

21  Additionally, PPFF anticipates that deposition testimony may be useful and/or necessary

22  before the factual matters addressed by PPFF's Motion can be fully addressed and

23  resolved.  Under Fed. R. Civ. P. 56(f) and the controlling precedent, the incompleteness of

24  the discovery process requires that the Motion be denied.

---

[12] *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (a party's burden of producing evidence in response to a summary judgment motion does not even arise until that party has had a full opportunity to conduct discovery).

25

26

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 23
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1

## IV.    CONCLUSION

2        For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment

3   must be denied.

4        DATED this 8th day of September, 2005.

5   Respectfully submitted,

6

7   _____         Of Counsel:
    Paul J. Kundtz, WSBA # 13548        Stephen G. Topetzes
8   pkundtz@riddellwilliams.com         Lisa M. Richman
    Courtney L. Seim, WSBA # 35352      *Admitted pro hac vice*
9   cseim@riddellwilliams.com           KIRKPATRICK & LOCKHART
    RIDDELL WILLIAMS, P.S.              NICHOLSON GRAHAM LLP
10  1001 Fourth Avenue Plaza            1800 Massachusetts Ave. N.W.
    Suite 4500                          Suite 200
11  Seattle, Washington 98154           Washington D.C. 20036
    Tel.: 206-624-3600                  Tel: 202-778-9001
12  Fax: 206-389-1708                   Fax: 202-778-9100

13

14  Attorneys for Defendant and Counterclaimant, Permanent Portfolio Family of Funds, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

Defendant's Opposition To Plaintiff's
Motion For Partial Summary Judgment (No. 2:05-cv-980) - 24
291/487696.01
090805/1916/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on September 8, 2005, I electronically filed the Defendant's

3  Opposition to Plaintiff's Motion for Partial Summary Judgment with the Clerk of the

4  Court using the CM/ECF system which will send notification of such filing to the

5  following:

6

| William F. Cronin<br>Corr Cronin Michelson Baumgardner &<br>  Preece, LLP<br>1001 Fourth Avenue Plaza, Suite 3900<br>Seattle, WA 98154-1051<br>Email: wcronin@corrcronin.com<br>Phone: (206) 621-1406<br>Fax: (206) 625-0900 | Laurie N. Thornton<br>Corr Cronin Michelson Baumgardner &<br>  Preece, LLP<br>1001 Fourth Avenue Plaza, Suite 3900<br>Seattle, WA 98154-1051<br>Email: lthornton@corrcronin.com<br>Phone: (206) 274-8666<br>Fax: (206) 625-0900 |
| --- | --- |

11      Because the pleadings related to the Opposition to Plaintiff's Motion for Partial

12  Summary Judgment exceeded 100 pages, I also filed a Courtesy Copy for Chambers of this

13  and all related pleadings with the Court.  There are no parties that require manual service

14  on this case.

15      Executed at Seattle, Washington, this 8th day of September, 2005.

16

17                              Courtney Seim, WSBA #35352

18                              RIDDELL WILLIAMS P.S.
                               1001 Fourth Avenue Plaza, Suite 4500
19                              Seattle, WA  98154
                               Phone:  (206) 624-3600; Fax:  (206) 389-1708
20                              email: cseim@riddellwilliams.com

21

22

23

24

25

26

CERTIFICATE OF SERVICE - (No.  2:05-cv-980 MJP)

291/487607.01
090805/1918/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1065
(206) 624-3600