UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW LAYMAN,

    Plaintiff,

v.

THE PERMANENT PORTFOLIO FAMILY OF FUNDS, INC.,

    Defendant.

No. C05-980P

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's motion for partial summary judgment. (Dkt. No. 9). This motion concerns certain provisions of an option contract between the parties. Having considered the papers and pleadings submitted by the parties and finding that oral argument is not necessary for the disposition of this motion, the Court hereby DENIES Plaintiff's motion for the reasons stated below.

**Background**

A.    <u>The 1990 Option Contract</u>

On April 6, 1990, Plaintiff Andrew Layman entered into a option contract with Defendant Permanent Portfolio Family of Funds (PPFF). This contract was labeled as a "Common Stock Purchase Warrant" and is referred to by the parties as the "Warrant."

Under the Warrant, Defendant had a 15-year option to purchase Symantec stock owned by Plaintiff. When the Warrant was executed in 1990, Plaintiff received a payment from Defendant that represented slightly more than 70 percent of the stock's closing bid price as of April 6, 1990. The

ORDER - 1

Warrant provided that if Defendant subsequently exercised its option to purchase Plaintiff's stock, Plaintiff would receive an additional 55.6 percent of the stock's value as of April 6, 1990.

Among other things, the Warrant provides:

1) PPFF has the right "at any time on or after the date hereof [April 6, 1990] to and including April 6, 2005, to purchase" Plaintiff's stock. (Warrant at 1).

2) "Upon lapse of the Warrant or failure to exercise prior to April 6, 2005, the parties agree that the Warrant will have no further force and effect . . . ." Id. at 2.

Plaintiff argues that Defendant failed to exercise the Warrant or to purchase Plaintiff's stock by April 6, 2005. Defendant maintains that it took sufficient steps to exercise the Warrant before April 6, 2005 and argues that the Warrant did not require that the purchase be closed by that date.

B.  Dealings Between the Parties in the Spring of 2005

On March 8, 2005, PPFF's President Michael Cuggino sent Plaintiff an e-mail regarding the Warrant. In this e-mail, Mr. Cuggino indicated that he would be sending Plaintiff a letter regarding PPFF's intent to exercise the Warrant in full.

On March 10, 2005, Mr. Cuggino sent Plaintiff the letter via overnight delivery, along with a document titled "Election to Exercise Common Stock Purchase Warrant." The "Election to Exercise" document stated that the closing date and time of the exercise of the purchase of the stock would be March 25, 2005, at 4:00 p.m. Eastern Time

On March 23, 2005, Mr. Cuggino sent another e-mail to Plaintiff. Mr. Cuggino noted that Plaintiff had not indicated a desire to exercise his right of prevention under the Warrant and indicated that Mark Duarte of State Street Bank and Trust was preparing a certified check from PPFF payable to Plaintiff in the amount of $250,200. Mr. Cuggino also indicated that Mr. Duarte would be sending power of attorney forms to Plaintiff. Mr. Cuggino stated that Plaintiff needed to sign these power of attorney forms in order to transfer the registration of Plaintiff's shares into the name of PPFF. Mr. Cuggino indicated that he would surrender the check for $250,200 and the original Warrant to Plaintiff upon receipt of the power of attorney forms from Plaintiff.

ORDER - 2

1    On March 28, 2005, Mr. Duarte e-mailed copies of the power of attorney forms (which he
2 referred to as the "stock power" forms) to Plaintiff.  Mr. Duarte directed Plaintiff to print and sign six
3 copies of the forms and to send the original copies to him by overnight delivery.

4    On April 1, 2005, Mr. Cuggino sent another e-mail to Plaintiff.  Mr. Cuggino noted that State
5 Street had not yet received signed stock power forms and asked Plaintiff to "[p]lease execute them as
6 soon as possible as I would like to re-register the certificates before the expiration of the warrant next
7 week."

8    On April 7, 2005, Mr. Cuggino sent another e-mail to Plaintiff.  Mr. Cuggino indicated that
9 State Street still had not received executed stock power forms from Plaintiff.  Mr. Cuggino again
10 asked Plaintiff to execute them and to return them to State Street as soon as possible.

11    On April 12, 2005, Plaintiff and Mr. Cuggino spoke on the telephone.  Plaintiff sent Mr.
12 Cuggino an e-mail later in the day that read as follows:

13    This is a recap of our phone call this morning:

14    I've been waiting to receive the $250K check.  You think I should sign the papers first.
       You've not sent the check and will talk to your fund lawyer to better understand what
15     sequence things should be done in and will get back to me tonight or tomorrow.

16 The following day, Mr. Cuggino sent Plaintiff an e-mail stating that he "agree[d] with the
17 summarization of events" and indicating that "I think the best course of action would be to effect a
18 'closing' in person," in which Mr. Cuggino would present Plaintiff with a check for $250,200 and
19 Plaintiff would execute the stock transfer forms.

20    Over the next several weeks, the parties attempted to set a time and a place for an "in-person"
21 closing.  Making such arrangements was apparently complicated by the fact that Plaintiff lived in the
22 Seattle area, while Defendant was based in the San Francisco Bay Area.  On May 4, 2005, Plaintiff
23 indicated that he would be in Palo Alto on May 12, 2005, and Mr. Cuggino replied via e-mail that
24 PPFF's corporate secretary would be able to meet with Plaintiff in Palo Alto on that date to complete
25 the closing.

ORDER - 3

C. <u>Suit and Countersuit</u>

The closing did not take place in Palo Alto on May 12th. Instead, Plaintiff filed suit against PPFF in state court on May 10, 2005. (Dkt. No. 1). Plaintiff requested a declaratory judgment providing, among other things, "that the Fund has failed to timely exercise its rights under the Warrant, that the Warrant has lapsed and that the Warrant has no further force and effect." <u>Id.</u>

Defendant removed Plaintiff's lawsuit to this Court and filed an answer, as well as several counterclaims. (Dkt. No. 2).

**Analysis**

Although Plaintiff describes the relief requested in various ways throughout the briefing, Plaintiff essentially seeks a ruling on the following questions:

(1) Did Defendant's notice of election to exercise on March 10, 2005 constitute an "exercise" of the Warrant?

(2) Did the Warrant require the purchase of Plaintiff's stock to be completed by a deadline of April 6, 2005?

1. <u>Applicable Law</u>

Although Plaintiff now lives in Washington state, he was apparently living in California when the Warrant was executed in 1990. Defendant was also based in California. As such, it could be argued that California law should apply in this case. However, the parties agree that there is no need for the Court to reach choice of law issues in ruling on the pending motion. Plaintiff states that "there is no need to address conflict of laws issues, because Washington and California law are the same on the issue critical to this motion, with California law more fully developed on option contracts." (Opening Brief at 6 n.3). Defendant agrees that "California and Washington substantive law are consistent with respect to the issues related to this Motion" and states that "the Court need not reach any determination on choice of law in order to decide the Motion," although Defendant "reserves the right to raise any choice of law issues at a later time." (Opp. Brief at 12 n.3).

ORDER - 4

A federal court sitting in diversity applies the choice of law rules of the forum state to determine the controlling substantive law. Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005). Under Washington law, a conflict of law analysis is unnecessary unless a party seeking to apply foreign law shows that an actual conflict exists between the presumptive Washington law and the law of a different state. Alaska Nat'l Ins. Co. v. Bryan, 125 Wn. App. 24, 30, 104 P.3d 1 (2004). "An actual conflict exists if the two states' laws produced different results on a legal issue." Id. Here, since the parties agree that there is no conflict between Washington and California law on the issues related in this motion, the Court will apply Washington law.

2.  Interpretation of the Warrant

In essence, Plaintiff argues: (1) Defendant's notice of election to exercise on March 10, 2005 did not constitute an "exercise" of the Warrant; and (2) the Warrant required Defendant to complete the purchase of Plaintiff's stock by a deadline of April 6, 1990. Although these two issues are related, they will be analyzed separately below.

   a.  "Exercise" of the Warrant

The Warrant provides that "[u]pon lapse of the Warrant or failure to exercise prior to April 6, 2005, the parties agree that the Warrant will have no further force and effect . . . ." (Warrant at 2). Plaintiff argues that Defendant's March 10th notice of its election to exercise the Warrant was not sufficient to "exercise" the Warrant before April 6th. Instead, Plaintiff suggests that Defendant had to purchase to stock before April 6, 2005 in order to "exercise" the Warrant. See, e.g., Reply at 5 ("[t]he question is whether the 'exercise' of the Warrant was to be the purchase of the stock or was to be the notice.").

To support its argument, Plaintiff points to a provision of the Warrant entitled "Method of Exercise; Right of Prevention[1]" that states:

---

[1] It should be noted that the Warrant provides that "[t]he headings of the Sections and subsections . . . are inserted for convenience only and shall not be deemed to constitute a part of this

ORDER - 5

> In the event the holder of this Warrant [PPFF] elects to exercise it in whole or in part, the holder shall give the Maker [Mr. Layman] fourteen (14) days' [sic] prior written notice of its election to exercise, specifying the number of shares of Common Stock to be purchased, the Purchase Price per share as then in effect, and the closing date and time of the exercise."

(Warrant at 2-3). Plaintiff argues that this provision "clearly demonstrates that the notice contemplated an 'exercise' subsequent to the notice; the notice *was not* to be the exercise. . . . The only other action prescribed by the Warrant that follows the notice and could constitute the exercise is the actual purchase of the stock. The 'exercise,' therefore, has to be the 'purchase.'" (Reply at 5) (emphasis in original). Plaintiff cites a number of cases from both Washington and California to support its reading of the Warrant.

Defendant maintains that the cases cited by Plaintiff are not analogous, arguing that the Warrant does not explicitly provide that payment for the stock was a condition that had to be performed before April 6, 2005 in order to "exercise" the Warrant. Defendant suggests that notice of its election to exercise on March 10, 2005 was the only condition that needed to occur before April 6, 2005 in order to "exercise" the Warrant. Defendant also argues that both parties played a role in drafting the contract, which creates a factual question for the purposes of applying the general rule that ambiguities in a contract should be construed against the drafter. In addition, Defendant contends that prior to filing this lawsuit on May 10, 2005, Plaintiff never complained that Defendant's notice of election was insufficient to "exercise" the Warrant, but instead gave every indication that he was prepared to close the transaction on May 12, 2005. Defendant observes that "Washington courts determine the parties' intent not just from the plain language of the contract, but from all the surrounding circumstances," including the "subsequent acts and conduct of the parties to the contract." Scribner v. Worldcom, Inc., 249 F.3d 902, 907 (9th Cir. 2001) (citing Berg v. Hudesman, 115 Wn. 2d 657, 801 P.2d 222 (1990)). But see Hearst Communications, Inc. v. Seattle Times Co., 154 Wn. 2d 493, 503, 115 P.3d 262 (2005) (noting that "surrounding circumstances and other

---

Warrant." (Warrant at 11).

ORDER - 6

extrinsic evidence are to be used 'to determine the meaning of *specific words and terms used*' and not to 'show and an intention independent of the instrument' or to 'vary, contradict or modify the written word.'") (emphasis in original) (internal citations omitted).

The Court finds Defendant's arguments more persuasive. The Warrant does not clearly indicate which actions had to be completed by April 6, 2005 in order to "exercise" the Warrant. In particular, the Warrant does not expressly state that Defendant had to tender payment for the stock before April 6, 2005 in order to "exercise" the Warrant by that date. In addition, Plaintiff's conduct before he filed this lawsuit suggests that he did not initially regard Defendant's failure to tender payment for the stock by April 6th to constitute a "failure to exercise" the Warrant. Therefore, the Court denies Plaintiff's request for partial summary judgment on whether Defendant's notice of election to exercise on March 10, 2005 constituted an "exercise" of the Warrant.

b.   <u>Time for Completing Purchase</u>

The Warrant provides that PPFF is "entitled, subject to the terms and conditions hereinafter set forth, at any time on or after the date hereof [April 6, 1990] to and including April 6, 2005, to purchase" Plaintiff's Symantec stock. (Warrant at 1). Plaintiff suggests that this provision (along with the "failure to exercise" provision discussed above) established a "deadline" of April 6, 2005 to complete the purchase of the stock. Plaintiff also maintains that to complete the purchase, Defendant had to tender the purchase price and return the original Warrant, noting that the Warrant provides "[u]pon presentation and surrender of this Warrant, together with payment of the Purchase Price of the shares of Common Stock thereby purchased, to the Maker . . . the holder of this Warrant shall be entitled to receive a certificate or certificates for the shares of Common Stock so purchased." (Warrant at 1-2).

Defendant argues that the Warrant does not expressly state that payment had to be made by April 6, 2005. Defendant points to cases holding that when the time for making payment is not explicitly specified in an option contract, payment only needs to be made within a reasonable time.

ORDER - 7

See, e.g., Duprey v. Donohue, 52 Wn. 2d 129, 135, 323 P.2d 903 (1958) (holding that "[w]here, as here, no time is specified in the option agreement for the final payment and delivery of the instruments of conveyance, the time of payment and delivery is a reasonable time after acceptance of the offer.").

The Court again finds Defendant's argument more persuasive. The Warrant does not explicitly provide that payment and delivery of the original Warrant was required by April 6, 2005. Therefore, Plaintiff's request for partial summary judgment on the question of whether the purchase had to be completed by a "deadline" of April 6, 2005 is denied.

3.  Rule 56(f) Request

Defendant also argues that Plaintiff's motion should be denied under Fed. R. Civ. P. 56(f). The Court need not consider this request in light of the denial of Plaintiff's motion on other grounds. In any case, Plaintiff correctly notes that Defendant failed to comply with the requirements of Rule 56(f), which "requires litigants to submit affidavits setting forth the particular facts expected from further discovery." State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998) (internal citations omitted).

**Conclusion**

The Warrant does not clearly indicate what actions Defendant had to take before April 6, 2005 to "exercise" the Warrant, nor does it explicitly provide that Defendant had to tender payment by that date. Therefore, Plaintiff's motion for partial summary judgment is denied.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: October 31, 2005

s/Marsha J. Pechman
Marsha J. Pechman
United States District Court

ORDER - 8