The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10  ANDREW LAYMAN, a married man,          No. 2:05-cv-980 MJP

11                  Plaintiff,             **DEFENDANT'S MOTION FOR
                                           PARTIAL SUMMARY JUDGMENT**
            v.
12                                         **ORAL ARGUMENT REQUESTED**
    THE PERMANENT PORTFOLIO                **Noted for Hearing: March 31, 2006**
13  FAMILY OF FUNDS, INC., a Maryland
    Corporation,
14                  Defendant.

15

16          Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Permanent

17  Portfolio Family of Funds, Inc. ("PPFF") respectfully moves for summary judgment on all

18  claims asserted by Plaintiff Andrew Layman in this action as well as on certain of PPFF's

19  counterclaims.[1]  As set forth below, well-established case law and the undisputed factual

20  record demonstrate that there is no triable question of fact with respect to any of Plaintiff's

21  claims against Defendant or the subject counterclaims by Defendant against Plaintiff.

22  Accordingly, Defendant is entitled to judgment as a matter of law.

23  _____

24  1 PPFF is not moving for summary judgment with respect to its remaining counterclaims, each of which rests
    on an equitable theory that involves elements that are not addressed in this motion; however, all of the claims
    and counterclaims asserted in this action center on the same core facts and essentially the same alleged
25  injuries or claims of entitlement by the parties.  Thus, an order granting this Motion for Partial Summary
    Judgment effectively would end this lawsuit.
26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT          Riddell Williams p.s.
(No. 2:05-cv-980MJP) - 1                            1001 FOURTH AVENUE PLAZA
291/512564.01                                              SUITE 4500
030706/2138/62316.00001                             SEATTLE, WA 98154-1192
                                                        (206) 624-3600

1

## I.  INTRODUCTION

2  The subject claims turn on a single legal question: the interpretation of the

3  Common Stock Purchase Warrant ("Warrant") entitling PPFF to purchase certain shares of

4  Symantec Corporation ("Symantec") stock from Mr. Layman.  There is no material dispute

5  with respect to what any of the parties said or did.  There is no dispute regarding the

6  language of the Warrant, or that the Warrant determines the obligations of the parties and

7  governs the resolution of this case.  Neither party alleges that something collateral to the

8  contract controls this dispute or that parole evidence applies.  The difference of opinion

9  centers solely on the interpretation of the Warrant and, specifically, what actions were

10  required from both parties pursuant to the terms of the Warrant.

11  In early March 2005, PPFF provided Mr. Layman with a written Election to

12  Exercise its rights to purchase the Symantec stock available under the Warrant.  The stock

13  purchase transaction did not occur, and each party contends the other party failed to meet

14  its obligations under the Warrant.  The parties disagree on two primary issues.

15  First, Mr. Layman contends that the Warrant required PPFF to pay the purchase

16  price for the Symantec stock on or before April 6, 2005, without regard for whether

17  Plaintiff secured his obligations by signing and delivering stock assignment forms with

18  respect to the Symantec stock, which were necessary to permit the transfer of the stock into

19  PPFF's name.  PPFF believes the Warrant required Mr. Layman to execute and deliver the

20  stock assignment forms before PPFF was obligated to pay the purchase price for the stock.

21  Second, Mr. Layman alleges that, under the Warrant, he was not required to

22  respond to PPFF's repeated attempts to cause him to facilitate the closing of the purchase

23  transaction in early 2005.  PPFF, on the other hand, believes that Mr. Layman breached the

24  parties' agreement by failing to communicate with PPFF regarding the Election to Exercise

25  and contemplated stock purchase transaction, and by not responding to numerous requests

26  by PPFF that he execute and deliver the stock assignment forms.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 2
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    There is no material issue of fact in this case. Neither the language of the Warrant

2    nor the parties' undisputed conduct supports Mr. Layman's interpretation of the Warrant.

3    Instead, as described below, it is clear that Mr. Layman failed to live up to his end of the

4    bargain, while PPFF performed all acts required of it pursuant to the Warrant. The Court

5    can now decide these matters without necessitating additional investment of resources by

6    either party.

## II.    STATEMENT OF FACTS

7    PPFF hereby incorporates the factual recitation set forth in the Court's October 31,

8    2005 Order denying Plaintiff's Motion for Partial Summary Judgment. The relevant facts

9    are repeated below.

10    PPFF is a registered investment company that consists of four separate mutual fund

11    portfolios, each with its own separate investment objective and policies. PPFF currently

12    has approximately $515 million in total net assets. The shares of PPFF are owned by

13    thousands of individual mutual fund investor accounts, including accounts held by Mr.

14    Layman and his wife.

15    In 1990, the President and Chairman of PPFF was Terrence Michael Coxon. In

16    addition to his positions at PPFF, Mr. Coxon and Terry Coxon, Inc., a corporation wholly

17    owned by Mr. Coxon, were the general partners of World Money Managers, investment

18    adviser to PPFF at the time. Terry Coxon, Inc. had certain private investment advisory

19    clients, including Mr. Layman, who was then employed by Symantec. Mr. Layman

20    received certain Symantec stock pursuant to his employment. Mr. Coxon was interested in

21    assisting Mr. Layman to "raise cash," "remove the price risk of the [Symantec] stock from

22    his own portfolio" and "defer recognition of gain" in order to avoid certain tax

23    consequences. See Exhibit 4. Thus, Mr. Coxon, in collaboration with Mr. Layman and

24    others, conceived a "deep-in-the-money call option on [Mr. Layman's] low basis shares" in

25    Symantec stock. See Declaration of Stephen G. Topetzes, filed herewith, ("Topetzes

26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 3
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   Decl.") at ¶¶ 5, 10 and Exhibits 4, 9. Mr. Coxon convinced PPFF's Board of Directors that

2   the Warrant would be a good investment for PPFF, whereupon Mr. Coxon, then-outside

3   counsel to PPFF, Richard B. Rolnick, Mr. Layman, and Mr. Layman's attorney, Mark

4   Epstein, drafted the Warrant. See Exhibit 9. Mr. Layman is referred to as the "Maker" of

5   the Warrant and PPFF is referred to as the "Holder." See Declaration of Michael J.

6   Cuggino, filed herewith, ("Cuggino Decl.") at ¶ 3 and Exhibit A. The Warrant is dated as

7   of April 6, 1990, and it specifies an operative period of 15 years. Id.

8   　　　The Warrant provides that PPFF shall be entitled to purchase certain shares of

9   Symantec stock from Mr. Layman. As consideration for the rights PPFF received under

10  the Warrant, Mr. Layman received 72.3% of the closing bid price of the Symantec stock on

11  April 6, 1990, or $329,400. The Warrant contemplated that he would receive an additional

12  55.6% of the April 6, 1990 closing bid price, or $250,200, upon purchase of the shares by

13  PPFF pursuant to the Warrant. See Exhibit A, Warrant at page 1. Thus, under the

14  Warrant, Mr. Layman granted PPFF an option to elect to purchase the subject shares in

15  exchange for a commitment by PPFF to pay a premium to the market price of those shares

16  on April 6, 1990 (72.3% plus 55.6% of the then total market price). Id.

17  　　　When the Warrant was signed by the parties, it covered initially 22,500 shares of

18  Symantec stock. As contemplated under the terms of the Warrant, Mr. Layman signed and

19  delivered the stock power forms for the first 22,500 shares of Symantec stock to State

20  Street Bank & Trust Company ("State Street"), PPFF's custodian.[2] See Exhibit 5 at

21  Layman 000025, 000041.

22  　　　Article 2.2 of the Warrant states that upon any subdivision or dividend of the

23  underlying shares of Symantec stock, other than a cash dividend payable out of current

24  ───────────────

25  2  The stock power forms are referred to as "stock assignments" in the Warrant. The terms "stock power forms" and "stock assignments" are synonymous and will therefore be used interchangeably. Such forms have the same effect: to authorize the transfer of ownership of the Symantec shares.

26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 4
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  earnings, the "holder of [the] Warrant [PPFF] shall thereafter . . . be entitled . . . to

2  purchase" the additional shares created by such subdivision or dividend.  See Exhibit A,

3  Warrant at page 4-5, Article 2.2.  Through stock splits or other corporate transactions

4  involving Symantec stock between 1990 and 2005, the 22,500 shares of Symantec stock

5  that PPFF was entitled to purchase under the Warrant grew to 360,000 shares.  See Exhibit

6  1, Complaint at ¶ 8; Cuggino Decl. at ¶ 4 and Exhibit B.

7        Under the Warrant, Mr. Layman had an obligation to deliver stock power forms for

8  any additional shares created by a stock split or other corporate transaction affecting the

9  Symantec shares to State Street.  See Exhibit A.  Specifically, Article 5 of the Warrant

10  provides that, **"to secure his obligations"** under the Warrant, Mr. Layman was obligated

11  to deposit with State Street stock certificates for the Symantec shares covered by the

12  Warrant, **"along with stock assignments executed in blank."**  See Exhibit A, Warrant at

13  page 10, Article 5 (emphasis added).  Mr. Layman failed to execute and deliver the stock

14  assignment forms despite PPFF's repeated requests that he do so.  See, e.g., January 18,

15  2006 Deposition of Andrew Layman ("Layman Depo."), filed herewith as Exhibit 10, at

16  132:22-133:8; 149:15-150:2; Cuggino Decl. at ¶¶ 3, 11, 12, 16 and Exhibits I, K, L;

17  Topetzes Decl. at ¶¶ 6, 7 and Exhibits 5, 6.

18        By 2004, the market value of the 360,000 shares of Symantec stock covered by the

19  Warrant was several million dollars.  No later than November 2004, PPFF indicated to Mr.

20  Layman that it was interested in exercising its rights under the Warrant to purchase all of

21  the Symantec shares.  See Cuggino Decl. at ¶ 5 and Exhibit C.  PPFF affirmed this interest

22  in an email communication on March 8, 2005.  See Cuggino Decl. at ¶ 6 and Exhibit D.

23  Between November 2004 and March 2005, the parties communicated regarding the shares

24  and the Warrant, including discussions regarding stock certificates that were not deposited

25  by Mr. Layman with State Street until January 2005.  See Cuggino Decl. at ¶¶ 4, 5.

26        On or about March 10, 2005, PPFF transmitted to Mr. Layman its written Election

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 5
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   to Exercise the Warrant and purchase the full amount of Symantec stock that it was entitled

2   to purchase under the Warrant.  The Election to Exercise stated that PPFF elected to

3   purchase from Mr. Layman 360,000 shares of Symantec stock at a purchase price per share

4   of $0.695 for an aggregate price of $250,200.  The Election to Exercise also stated that the

5   closing date and time for the transaction would be March 25, 2005 at 4:00 p.m. (Eastern

6   Time).  PPFF advised Mr. Layman that the purchase price would be paid and the Warrant

7   surrendered at the time of the closing and requested that Mr. Layman contact the President

8   of PPFF to coordinate the closing.  See Cuggino Decl. at ¶ 7 and Exhibit E at Layman

9   000090.  Mr. Layman never contacted PPFF to coordinate the closing.  Nevertheless, on or

10  about March 15, 2005, Michael J. Cuggino, the Chairman, President and Treasurer of

11  PPFF, contacted Mr. Layman by telephone to confirm his receipt of the Election to

12  Exercise.  See Cuggino Decl. at ¶ 9 and Exhibit G.  Mr. Layman has acknowledged both

13  this telephone confirmation by PPFF and his prompt receipt of the written Election to

14  Exercise sent by PPFF on March 10, 2005.  Exhibit 10, Layman Depo. at 114:25-115:22,

15  120:15-121:8.

16      In addition, in an email communication on or about March 23, 2005, PPFF notified

17  Mr. Layman that State Street had informed PPFF that Mr. Layman must complete stock

18  power forms for the Symantec shares before the stock could be transferred into PPFF's

19  name.  See Cuggino Decl. at ¶ 10 and Exhibit H.  PPFF requested that Mr. Layman execute

20  the stock power forms and return them to State Street.  Id.  PPFF informed Mr. Layman

21  that, after receipt of the stock power forms, PPFF would surrender the Warrant and convey

22  a certified check for the purchase price to Mr. Layman.  Id.  PPFF was prepared to close the

23  transaction on or about March 25, 2005, and had procured a certified check in the amount

24  of the purchase price and the original copy of the Warrant from State Street in order to

25  effectuate the closing.  Both of these items were in PPFF's possession at its headquarters in

26  San Francisco, California, on or about March 25, 2005, as evidenced by a check in PPFF's

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 6
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   possession bearing that date and a Federal Express receipt reflecting that PPFF received the

2   original Warrant and the check from State Street on March 25, 2005, in advance of the

3   noted closing time. See Cuggino Decl. at ¶ 18 and Exhibits O, P.

4        Between March 23, 2005 and April 13, 2005, PPFF repeatedly attempted,

5   telephonically and via email correspondence, to coordinate with Mr. Layman regarding his

6   execution and submission of the stock power forms and to coordinate the closing of the

7   stock purchase transaction contemplated by the Warrant. See Cuggino Decl. at ¶ 11 and

8   Exhibits I, J. Mr. Layman did not respond to PPFF until April 12, 2005, at which time he

9   stated that he would not provide the signed stock assignment forms until he received a

10   check for the final purchase price. See Exhibit I at Layman 0000109. On or about April

11   13, 2005, PPFF and Mr. Layman agreed that all remaining matters related to the stock

12   purchase transaction would occur at the same time, and that they would exchange the stock

13   power forms, the original Warrant and a certified check for the amount of the purchase

14   price at a mutually convenient time. See Cuggino Decl. at ¶ 12 and Exhibit K at Layman

15   000110-000113 and Exhibit L. On May 4, 2005, the parties agreed that the closing of the

16   stock purchase transaction would occur at an in-person meeting between Mr. Layman and

17   Clement M. Wallace, the Secretary of PPFF, in Palo Alto, California, on May 12, 2005.

18   See Cuggino Decl. at ¶ 13 and Exhibit M. There was additional correspondence regarding

19   this meeting. See Cuggino Decl. at ¶¶ 12, 14 and Exhibits K, N.

20        The closing never occurred, however, because Mr. Layman filed the Complaint in

21   this action on May 10, 2005.   At no time prior to April 12, 2005, did Mr. Layman assert

22   that he was not obligated to provide the signed stock power forms required to facilitate the

23   purchase of the Symantec stock by PPFF under the Warrant. See Exhibit 10, Layman

24   Depo. at 159:13-23; Cuggino Decl. at ¶ 15. Further, Mr. Layman did not allege prior to

25   May 10, 2005 that PPFF had failed to exercise properly or timely its option to purchase the

26   Symantec stock under the Warrant. Exhibit 10, Layman Depo. at 158:8-22; Cuggino Decl.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 7
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    at ¶ 15.

2        Article 4 of the Warrant provides that "[e]ach of the parties agrees to perform such

3    other and further acts as shall be necessary to effectuate the rights of the other party to this

4    Warrant." See Exhibit A, Warrant at page 9-10, Article 4.  In addition, Article 2.7 of the

5    Warrant states that **"[t]he Maker [Mr. Layman] will not, through any voluntary action,**

6    **avoid or seek to avoid the observance or performance or any of the terms of this**

7    **Warrant, but will at all times in good faith assist in the carrying out of all such terms**

8    **and in the taking of all such action as may be necessary or appropriate in order to**

9    **equitably protect the rights of the holder or holders of this Warrant [i.e., PPFF]"**

10   (emphasis added).  See Exhibit A, Warrant at page 9, Article 2.7.  Mr. Layman breached

11   these provisions by failing to assist in carrying out the terms of the Warrant, by failing to

12   respond timely to PPFF's Election to Exercise its rights to purchase the Symantec stock

13   under the Warrant, by failing to execute the stock power forms required to effect the

14   purchase by PPFF, by delaying the closing of the stock purchase transaction, and by

15   refusing repeated requests by PPFF for his assistance in completing the transaction.

16       The Warrant constitutes a contract between Mr. Layman and PPFF.  Mr. Layman

17   breached his contract with PPFF by failing to abide by the terms and conditions of the

18   Warrant and, in particular, by failing to comply with his obligations under Articles 2.7, 4

19   and 5 of the Warrant.

20                          **III.    ARGUMENT**[3]

21   **A.    Summary Judgment Standard**

22       Summary judgment must be granted if there is no genuine issue as to any material

23   ────────────────
     3 A federal court sitting in diversity applies the choice of law rules of the forum state to determine the
24   controlling substantive law.  Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005).  Under
     Washington law, a conflict of law analysis is unnecessary unless there is an actual conflict between
     Washington law and that of a different state.  Alaska Nat'l Ins. Co. v. Bryan, 125 Wn. App. 24, 30, 104 P.3d
25   1, 7 (2004). California and Washington substantive law are commensurate on the issues related to this
     motion. Because the Court need not reach any determination on choice of law in order to decide this motion,
26   PPFF respectfully reserves the right to raise any choice of law issues at a later, appropriate time.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT                Riddell Williams P.S.
(No. 2:05-cv-980MJP) - 8                                   1001 FOURTH AVENUE PLAZA
291/512564.01                                                     SUITE 4500
030706/2138/62316.00001                                    SEATTLE, WA 98154-1192
                                                               (206) 624-3600

1  fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

2  See also Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th

3  Cir. 2004); Score LLC v. City of Shoreline, 319 F. Supp. 2d 1224, 1228 (W.D. Wa. 2004).

4  The moving party bears the burden of persuasion on the relevant issues. Score, 319 F.

5  Supp. 2d at 1228 (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).    Once a moving

6  party has demonstrated the absence of a genuine issue of fact as to one or more of the

7  essential elements of the nonmoving party's claims, the nonmoving party must make an

8  affirmative showing on all matters as to which the nonmoving party has the burden of

9  proof at trial. Celotex Corp., 477 U.S. at 324.    In such a situation, Federal Rule of Civil

10  Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by its own

11  affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

12  designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed.

13  R. Civ. P. 56(e)).    "The mere existence of a scintilla of evidence in support of the

14  [nonmoving party's] position will be insufficient; there must be evidence on which the

15  [fact finder] could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby,

16  Inc., 477 U.S. 242, 252 (1986).

17  **B.    PPFF Is Entitled To Judgment As A Matter Of Law On Counterclaims I & II
       (Breach Of Contract)**

18
19       PPFF's Counterclaims I and II turn on an interpretation of the language of the

20  Warrant and undisputed facts. Under Washington law, interpretation of an unambiguous

     contract is a question of law for the court. Mayer v. Pierce County Medical Bureau, Inc.,
21
     80 Wn. App. 416, 420, 909 P.2d 1323, 1326 (1995).    If the court determines that the
22
     contract language is unambiguous, it must interpret the contract according to its plain
23
     terms. Id.; Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wn. 2d 789, 797, 881 P.2d 1020,
24
     1025-26 (1994).    Summary judgment is appropriate if those plain terms unambiguously
25
     favor one side. Mayer, 80 Wn. App. at 420-21, 909 P.2d at 1326.
26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 9
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    A contract provision is deemed ambiguous only when its terms are uncertain or

2    when its terms can be understood as having multiple meanings.  Id.; Shafer v. Board of

3    Trustees of Sandy Hook Yaught Club Estates, Inc., 76 Wn. App. 267, 275, 883 P.2d 1387,

4    1393 (1994), review denied, 127 Wn.2d 1003, 898 P.2d 308 (1995).  Significantly, a

5    contract provision "is not ambiguous merely because the parties suggest opposing

6    meanings."  Mayer, 80 Wn. App. at 421, 909 P.2d at 1326; see also Wm. Dickson Co. v.

7    Pierce County, 128 Wn. App. 488, 493, 116 P.3d 409, 413 (2005) ("Courts give contract

8    terms their plain, ordinary, and popular meaning . . . . Courts interpret clear and

9    unambiguous terms as a question of law. An ambiguous provision is one fairly susceptible

10   to two different, reasonable interpretations.  But a contract is not ambiguous simply

11   because the parties suggest opposing meanings.").  Further, "ambiguity will not be read

12   into a contract where it can reasonably be avoided."  Mayer, 80 Wn. App. at 421, 909 P.2d

13   at 1326 (quoting McGary v. Westlake Investors, 99 Wn.2d 280, 285, 661 P.2d 971, 974

14   (1983).  PPFF respectfully submits that, in the present case, the contract terms are

15   unambiguous.  PPFF also respectfully submits that Mr. Layman cannot create a genuine

16   issue of material fact merely by contending that he relied on his own subjective or

17   unilateral interpretation of the terms of the Warrant. Wm. Dickson Co., 128 Wn. App. at

18   493, 116 P.3d at 413; Mayer, 80 Wn. App. at 421, 909 P.2d at 1326.[4]  Thus, interpretation

19   of the Warrant is a matter of law for the Court to decide, and this matter is appropriate for

20   summary judgment.

21        To establish a breach of contract, PPFF must establish four elements:  (1) the

22   existence of a contract; (2) Defendant's performance of the contract or excuse for

23

24   4 See also Hollis v. Garwall, Inc., 137 Wn.2d 683, 693-94, 974 P.2d 836, 842 (1999) (holding that "[a] court
     may look to extrinsic evidence to discern the meaning or intent of words or terms used by contracting parties,
25   even when the parties' words appear to the court to be clear and unambiguous . . . . However, admissible
     extrinsic evidence does not include: evidence of a party's unilateral or subjective intent as to the meaning of a
     contract word or term . . . .").

26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 10
291/512564.01
030706/2138/62316.00001

1   nonperformance; (3) a breach by Plaintiff; and (4) damage to Defendant resulting from
2   Plaintiff's breach. Battin v. First Interstate Mortgage Co., No. 94-56785, 1996 U.S. App.
3   LEXIS 16347, at *2-3 (9th Cir. June 17, 1996) (applying California law); Regan Roofing
4   Co., Inc. v. Superior Court, 24 Cal. App. 4th 425, 434-35 (1994); Citoli v. City of Seattle,
5   115 Wn. App. 459, 476, 61 P.3d 1165, 1174 (2002).   Because the undisputed record
6   establishes each of these elements, PPFF is entitled to summary judgment on
7   Counterclaims I and II.

8         1.    **The Warrant is a Contract**

9       Neither party denies that a contract for the sale of the Symantec shares exists.
10  Exhibit 1, Complaint at ¶ 4; Exhibit 3, Answer to Defendant's Counterclaim at ¶ 7; Exhibit
11  10, Layman Depo. at 76:9-11.   For that reason, the first element of breach of contract is
12  satisfied.

13        2.    **PPFF Performed Its Obligations Under the Contract**

14      When the provisions of an option contract prescribe a particular manner in which
15  the option is to be exercised, those instructions must be followed strictly. Palo Alto Town
16  & Country Village, Inc. v. BBTC Co., 11 Cal. 3d 494, 498, 521 P.2d 1097, 1098-99
17  (1974); see also Landberg v. Landberg, 24 Cal. App. 3d 742, 752 (1972) (quoting
18  Flickinger v. Heck, 187 Cal. 111, 113-14, 200 P. 1045 (1921)) ("The language of the
19  contract itself controls as to what act or acts constitute an election.").   When an option
20  contract "merely suggests, but does not positively require, a particular manner of
21  communicating the exercise of the option" strict compliance is not required. Palo Alto, 1
22  Cal. 3d at 498, 521 P.2d at 1099.

23      Article 1.2 of the Warrant, entitled "Method of Exercise," provides that: "In the
24  event the holder of this Warrant [PPFF] elects to exercise in whole or in part, the holder
25  shall give the Maker [Mr. Layman] fourteen (14) days' prior written notice of its election to
26  exercise, specifying the number of shares of Common Stock to be purchased, the Purchase

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 11
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   Price per share as then in effect, and the closing date and time of the exercise." See Exhibit

2   A, Warrant at page 2-3, Article 1.2. Beyond the information contained in the "Method of

3   Exercise" section, "exercise" is not defined in the Warrant and a method of "purchase" or

4   the closing procedures are not addressed in the Warrant. Instead, the Warrant merely states

5   that the purchase price shall be "55.6% of the closing bid price of such shares on April 6,

6   1990" and that it shall be "payable in cash or by certified or by cashier's bank check in

7   lawful funds of the United States of America." See Exhibit A, Warrant at page 1.   In

8   addition, the Warrant states that "[u]pon presentation and surrender of this Warrant,

9   together with payment of the Purchase Price of the shares of Common Stock thereby

10  purchased, to the Maker . . . the holder [sic] of this Warrant shall be entitled to receive a

11  certificate or certificates for the shares of Common Stock so purchased." See Exhibit A,

12  Warrant at page 1-2. The terms of the Warrant do not address a circumstance where the

13  Maker (Mr. Layman) fails or refuses to sign and deliver the stock assignments designed to

14  "secure his obligations" thereunder. See Exhibit A, Warrant at page 10, Article 5.

15      PPFF clearly performed all of the acts required of it to exercise its rights to

16  purchase the Symantec stock under the Warrant.  Pursuant to the Warrant, PPFF had an

17  obligation to provide a certain type of notice.  PPFF sent its "Election to Exercise" on or

18  about March 10, 2005, in which it specified the number of shares that it would purchase as

19  well as the per share purchase price, suggested a closing date and time for the stock

20  purchase, and provided over 14 days notice and the required time interval for Mr. Layman

21  to exercise his "right of prevention" (a type of preemptive right of first refusal under the

22  terms of the Warrant).  In accordance with the Warrant, PPFF also procured a check in the

23  amount of the purchase price and the original copy of the Warrant.  Finally, PPFF stood

24  ready to close the transaction at any time on or after March 25, 2005, the noted closing

25  date. Mr. Layman has not disputed any of these facts.

26      The only other requirement of PPFF is set forth in Article 4 of the Warrant which

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 12
291/512564.01
030706/2138/62316.00001

1    requires that "[e]ach of the parties agrees to perform such other and further acts as shall be

2    necessary to effectuate the rights of the other party to this Warrant." See Exhibit A,

3    Warrant at page 10, Article 4.  In accordance with this requirement, PPFF reached out on

4    numerous occasions to Mr. Layman to attempt to secure his cooperation in complying with

5    the Warrant and in participating in the closing of the stock purchase transaction.  Between

6    March 23, 2005 and May 10, 2005, PPFF attempted, telephonically and via email

7    correspondence, to coordinate with Mr. Layman regarding his execution and submission of

8    the stock power forms required under the Warrant.  PPFF also attempted to coordinate with

9    Mr. Layman regarding the closing of the stock purchase transaction.  Mr. Layman admits

10   that he received and was aware of these requests by PPFF that he cooperate in facilitating

11   the stock purchase transaction.  See, e.g., Exhibit 10, Layman Depo. at 117:14-24, 122:7-

12   124:3, 131:24-132:19, 137:25-138:22, 150:7-152:5, 153:1-154:2, 156:23-158:4, 162:5-22,

13   163:23-164:23, 167:21-168:16.  Therefore, it is undisputed that PPFF complied with the

14   requirements set forth in the Warrant.

15       Case law also supports PPFF's contention that it complied with the requirements of

16   the Warrant.  "An option, as a matter of legal theory, is considered to have a dual nature:

17   on the one hand it is an irrevocable offer, which upon acceptance ripens into a bilateral

18   contract, and on the other hand, it is a unilateral contract which binds the optionor to

19   perform an underlying agreement upon the optionee's performance of a condition

20   precedent."  Palo Alto, 11 Cal. 3d at 502; Turner v. Gunderson, 60 Wn. App. 696, 700-02,

21   807 P.2d 370, 373-74 (1991) (once an option is exercised, a new, bilateral contract is

22   created); 3 Corbin on Contracts § 11.17 at page 618 (West 1996 & 2005 Supp.) ("When an

23   option holder gives notice of acceptance of the option giver's proposal, the transaction is

24   very generally held to become a bilateral contract.  The option holder is now bound by a

25   promise, as well as the option giver.").

26       Once PPFF sent to Mr. Layman its March 10, 2005 "Election to Exercise," Mr.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 13
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   Layman was obligated to act to effectuate PPFF's rights to purchase the Symantec stock by

2   cooperating to facilitate the stock purchase transaction.[5]  See Exhibit A, Warrant at page 3,

3   Article 1.2.  In particular, under the Warrant, he was supposed to provide stock certificates

4   and stock assignment forms for the shares covered by the Warrant; he was required to

5   "assist in carrying out the terms" of the Warrant and take "all such action" necessary to

6   protect PPFF's rights; and, he was required to perform "other and further acts . . . necessary

7   to effectuate" PPFF's rights.  See Exhibit A, Warrant at page 9, Article 2.7 and page 10,

8   Article 4.

9       There is no disagreement between the parties with respect to what PPFF did prior to

10  March 25, 2005.  Mr. Layman acknowledges that he received the Election to Exercise, the

11  email communications and the telephone calls.  Mr. Layman also admits that the telephone

12  calls and emails from PPFF went unreturned until April 12, 2005.[6]  Exhibit 10, Layman

13  Depo. at 165:3-10.  Indeed, Mr. Layman maintains that he was not required to do anything

14  and that it was PPFF's burden to provide payment for the Symantec shares before he had

15  an obligation to contact PPFF regarding the stock purchase transaction or provide the

16

17  5 The payment of the final purchase price was not a condition precedent to the obligations of Mr. Layman
    under the bilateral contract created by the Election to Exercise sent by PPFF.  See Riverside Fence Co. v.
18  Novak, 273 Cal. App. 2d 656, 661 (1969) ("Unless the option so provides, the acceptance need not be
    accompanied by a tender of performance."); Cates v. McNeil, 169 Cal. 697, 704-07, 147 P. 944, 947-48
19  (1915) (holding that payment is not an "essential condition" to performance under an option contract when
    not an explicit part of the conditions required in order to exercise the option).  See also Murfee v. Porter, 96
20  Cal. App. 2d 9, 16-17, 214 P.2d 543, 548-49 (1950) (same); 3 Corbin on Contracts § 11.8 and note 6 at pages
    520-21 (West 1996 & 2005 Supp.) (citations omitted) ("In most cases, the courts are likely to interpret the
21  agreement in such a way that the contract will be held to be bilateral after a proper notice of acceptance.  In
    such cases, the notice of acceptance is operative without any tender of price; and this is true even though such
22  tender may still be a condition of the duty to execute a conveyance."); see also Erich v. Granoff, 109 Cal.
    App. 3d 920, 928-29 (1980) (holding that when option is silent to the time and mode of payment of purchase
23  price, exercise cannot be construed to include payment of purchase price because payment of the purchase
    price is "an obligation to be performed by the optionee in his performance of the conditions of the bilateral
    contract of purchase and sale which is formed upon the exercise of the option").
24  6  Although Mr. Layman has a vague recollection of "trad[ing] some phone mails" with Mr. Cuggino during
    early 2005, Mr. Layman could not point to any specific telephone calls that he attempted, returned or engaged
25  in with a PPFF representative regarding the closing of the purchase until April 12, 2005.  Layman Depo. at
    152:8-17, 165:3-166:19.  Moreover, the telephone records produced by the parties do not reflect any
26  telephone calls by Mr. Layman until, on or after April 12, 2005.  Exhibits G and K, Telephone Records.

1    signed stock powers.[7] See, e.g., Exhibit 10, Layman Depo. at 149:15-150:2, 151:12-152:5.

2    As noted in Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment,

3    this position is groundless. The Warrant does not state that payment for the stock was a

4    condition that had to be performed before April 6, 2005 in order to "exercise" the Warrant.

5    Moreover, nothing in the Warrant provides that PPFF was obligated to send the purchase

6    price check and the original Warrant to Mr. Layman when, as is undisputed in this case,

7    Mr. Layman failed to "secure his obligations" by delivering the signed stock assignment

8    forms required under Article 5 of the Warrant.

9         PPFF's Election to Exercise on March 10, 2005 was the only condition that needed

10   to occur before April 6, 2005, in order to "exercise" the Warrant. Prior to filing this

11   lawsuit, Mr. Layman never complained that PPFF's Election to Exercise was insufficient to

12   "exercise" the Warrant; rather, he gave every indication that he was prepared to close the

13   transaction on May 12, 2005. See Cuggino Decl. at ¶¶ 13-14 and Exhibits L, N, O. Mr.

14   Layman himself admits that he did not object to the notice prior to May 10, 2005, nor did

15   he assert, prior to April 12, 2005, that he was entitled to payment before he provided the

16   stock assignment forms. Exhibit 10, Layman Depo. at 158:8-13, 159:13-18.

17        The Election to Exercise sent to Mr. Layman by PPFF was sufficient to create

18   acceptance of the offer and create a bilateral contract. At that point, the purchase could be

19   consummated within a reasonable time, without running afoul of the terms of the Warrant.

20   See, e.g., Duprey v. Donahoe, 52 Wn. 2d 129, 134, 323 P.2d 903, 906 (1958); Cates, 169

21   Cal. at 706-07, 147 P. at 948; Murfee, 96 Cal. App. 2d at 9, 214 P.2d at 549. "If the

22   condition is only that notice shall be given within a certain time, and no time is specified

23   for the making of payment, a delay in paying is not fatal to the option holder. When option

24   contracts do not explicitly require payment of the purchase price as a condition precedent

25

26   7  Apparently, Mr. Layman's current understanding that there was a "deadline" of April 6, 2005 was
     formulated sometime on or after April 13, 2005. Layman Depo. at 157:10-158:4.

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  to exercise of the option, such agreements simply require a promise by the option holder to

2  pay the price (and not actual payment) and intend performance to be completed thereafter

3  within a reasonable time." Corbin on Contracts § 11.14 and notes 20 & 21 at page 616

4  (emphasis added).

5      **3.    Plaintiff Breached his Obligations Under the Contract**

6      In contrast to PPFF's performance of all of its obligations under the Warrant, Mr.

7  Layman breached his contract with PPFF by failing to abide by the terms and conditions of

8  the Warrant. In particular, he failed to comply with his obligations under Articles 2.7, 4

9  and 5.

10      The undisputed material facts show that Mr. Layman is in breach of the Warrant

11  signed by him and PPFF. The Warrant obligates Mr. Layman to "assist in the carrying out

12  of all [the terms of the Warrant] and tak[e] . . . all such action as may be necessary or

13  appropriate in order to equitably protect the rights of the holder or holders." See Exhibit A,

14  Warrant at page 9, Article 2.7. The Warrant also provides that "[e]ach of the parties agrees

15  to perform such other and further acts as shall be necessary to effectuate the rights of the

16  other party to this Warrant." See Exhibit A, Warrant at page 10, Article 4. Mr. Layman

17  breached both of these provisions because he failed to perform acts "necessary" to protect

18  and effectuate PPFF's rights. Mr. Layman failed to assist in carrying out the terms of the

19  Warrant, failed to respond timely to PPFF's Election to Exercise its rights to purchase the

20  Symantec stock, failed to execute the stock power forms required to effect the purchase by

21  PPFF, delayed the closing of the stock purchase transaction and refused repeated requests

22  by PPFF for his assistance and cooperation in completing the transaction.

23      Mr. Layman's delay in responding to PPFF and executing the stock assignment

24  forms deferred the closing date. Yet, Mr. Layman never disputed prior to May 10, 2005,

25  that he was obligated to provide the stock power forms to PPFF, nor did he refuse to

26  execute the forms. Although Mr. Layman deposited certificates for the 360,000 shares of

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 16
291/512564.01
030706/2138/62316.00001

1  Symantec common stock covered by the Warrant, contrary to Article 5 of the Warrant, he

2  did not provide State Street with "stock assignments" for the shares PPFF was entitled to

3  purchase. Exhibit A, Warrant at page 10, Article 5 (Plaintiff is to deposit stock certificates

4  "along with stock assignments executed in blank."). See Topetzes Decl. at ¶¶ 6, 7 and

5  Exhibits 5, 6. While the Warrant did not specify when the stock power forms were

6  supposed to have been completed and delivered to State Street, it did provide expressly that

7  Mr. Layman would "perform . . . acts as shall be necessary to effectuate the rights of the

8  other party to this Warrant." Exhibit A, Warrant at page 10, Article 4. The execution of

9  the stock power forms was clearly something that was "necessary to effectuate" PPFF's

10 right to purchase the stock and, therefore, something that was required explicitly under the

11 terms of the Warrant.

12       Moreover, on its face, the Warrant states that Mr. Layman was required to submit

13 the signed stock power forms to State Street in order "to secure his obligations" to PPFF.

14 See Exhibit A, Warrant at page 10, Article 5. Mr. Layman's apparent contention that the

15 Warrant required him to "secure his obligations" in this manner only **after** PPFF paid him

16 the final purchase price and delivered the original copy of the Warrant has no merit. The

17 only logical interpretation of that contract language is that the signed stock assignments

18 were to be on deposit with State Street pending a possible purchase of the Symantec shares

19 by PPFF.

20       Mr. Layman has admitted that he did not respond to PPFF's repeated attempts to

21 communicate with him and that he failed to complete the stock assignment forms or to take

22 any other action to effectuate the stock purchase transaction. Exhibit 10, Layman Depo. at

23 131:24-135:2, 146:21-147:4, 149:19-150:2, 165:3-10. Further, he has provided no

24 explanation why he failed to comply with his obligations under Articles 2.7 and 4 by

25 delaying the close of the purchase transaction, refusing to respond to PPFF's

26 communications and refusing to complete the stock assignment forms, beyond stating

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 17
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

repeatedly that there was nothing that he "needed" to do pursuant to his interpretation of the Warrant. See, e.g., Exhibit 10, Layman Depo. at 125:19-22, 132:15-17, 149:19-150:2, 151:23-152:5, 164:24-165:10, 170:2-14.    In doing so, he has stated expressly and repeatedly that he relied on nothing other than his understanding of the language of the Warrant. Id. at 127:22-25, 128:1-129:11, 131:10-19, 148:2-9, 170:21-171:16.

Mr. Layman has provided no reason for why he has failed to live up to his obligations under Article 5 of the Warrant beyond the fact that, pursuant to his interpretation of the agreement, he was not required to provide the stock assignment forms before PPFF paid him the purchase price.    Exhibit 10, Layman Depo. at  91:23-92:17, 127:22-128:2, 131:24-135:2, 146:21-147:4, 149:19-150:2.    Nonetheless, Mr. Layman has acknowledged that the contract contained a requirement to complete the stock power forms; he has acknowledged that PPFF contacted him on numerous occasions via telephone, email and regular mail to attempt to cause him to execute and deliver the stock power forms and schedule the closing; and, he has admitted that he neither sent the stock power forms nor assisted in scheduling the closing.[8] Exhibit 10, Layman Depo. at 120:12-14, 126:5-20, 127:22-128:2, 134:7-18, 149:15-150:2.

The option was accepted by PPFF on or about March 10, 2005.    At that time, Mr. Layman had to choose between two alternative courses of action under the Warrant.   He could choose to exercise his "right of prevention" within seven (7) days of PPFF's election and pay PPFF the "difference between the Purchase Price per share [$0.695] and the then current market price per share of the Common Stock [which varied between $20.26 and $21.26], multiplied by the [relevant] number of shares of [Symantec] Common Stock[,]" or he could agree to participate in the closing of the purchase of the shares of Symantec stock.

---

8  Mr. Layman asserted at various times during his deposition that Article 5 required of him only to provide stock assignment forms for the first 22,500 shares.  Later, he admitted that he was required to provide the stock assignment forms for the additional shares of Symantec stock eligible for purchase by PPFF, although he alleged that these were required of him only after he received payment of the final purchase price from PPFF.  Layman Depo. at 126:5-20, 127:22-128:2.

Riddell Williams p.s.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3800

1    Mr. Layman failed to take either of these actions.[9]

2        **4.    PPFF Has Been Damaged By Plaintiff's Breach**

3        Since PPFF sent Mr. Layman its Election to Exercise on March 10, 2005, the total

4    market value of the 360,000 shares of Symantec stock PPFF elected to purchase has

5    fluctuated in a range between approximately $8,600,000 and approximately $5,800,000.

6    To the extent PPFF is denied ownership of the subject Symantec stock, it plainly is

7    damaged in that amount.

8        PPFF's entitlement to the shares, at least in equity, was acquired at the time the

9    option was originally given.  See, e.g., Rollins v. Stokes, 123 Cal. App. 3d 701, 711

10   (1981).  After it exercised the option, PPFF therefore had a right to specific performance of

11   the transfer of the shares of Symantec stock, relating back to the time the option was given.

12   Landberg, 24 Cal. App. 3d at 752 (holding that when an optionee or holder "signifies his

13   desire to accept in accordance with the terms of the option, the optioner, or person making

14   the offer, becomes obligated to perform").  However, under the extant circumstances, PPFF

15   has been forced to fight for its right to the shares and, importantly, to the value that they

16   represented to PPFF's shareholders as of March 25, 2005, the date on which the closing

17   originally was to have taken place.  See Exhibit E, Election to Exercise.  PPFF has also

18   been damaged to the extent it has been unable to take possession of or utilize the shares

19   and/or make a determination as to whether a sale of some or all of the shares would be

20   advantageous to PPFF's shareholders.  Accordingly, Defendant respectfully requests that it

21

22   9  Aside from the contractual requirements themselves, Washington and California law also imply a covenant
     of good faith and fair dealing in every contract. Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir.
23   1989); State v. Trask, 91 Wn. App. 253, 272-73, 957 P.2d 781, 791 (1998). "The implied covenant imposes
     certain obligations on contracting parties as a matter of law – specifically, that they will discharge their
24   contractual obligations fairly and in good faith." Mundy, 885 F.2d at 544 (citing Koehrer v. Superior Court,
     181 Cal. App. 3d 1155, 1169 (1986)). As set forth above, Mr. Layman failed to discharge his contractual
25   obligations in good faith because he had both an affirmative duty to take certain actions pursuant to the
     contract and to equitably protect all of PPFF's rights under the contract, and a duty to avoid taking any
26   actions to prevent effectuation of the contract.

Riddell Williams p.s.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

be awarded its related damages, in an amount to be determined later.

## C.   PPFF Is Entitled to a Judgment As a Matter of Law on Mr. Layman's Declaratory Judgment Claim

Mr. Layman's claim for a declaratory judgment, which constitutes his only claim in this action, should be rejected for the same reasons that PPFF should prevail on its counterclaims for breach of contract.[10]

Mr. Layman has alleged that: (1) the parties had an enforceable agreement that "if [PPFF] wished to exercise the Warrant, [it was required] to tender the Warrant and Purchase Price to [Mr. Layman] before or on April 6, 2005"; (2) PPFF "failed to tender the Warrant and Purchase Price to Mr. Layman before or on April 6, 2005"; and (3) "[Mr.] Layman has performed his obligations under the Warrant." Exhibit 1, Complaint at page 4, ¶¶ 14-16.   As described above, the undisputed factual record negates each of these allegations.

Mr. Layman's position, which was the subject of his earlier motion for partial summary judgment, is utterly unsupported.  Mr. Layman requests that the Court determine that PPFF has failed to timely exercise its rights under the Warrant, that the Warrant has lapsed and is of no further force and effect; and, accordingly, that Mr. Layman is entitled to possession of the subject shares of Symantec stock.  Mr. Layman observes that the Warrant provides that PPFF is "entitled, subject to the terms and conditions . . . set forth [in the Warrant], at any time on or after the date hereof [April 6, 1990] to and including April 6, 2005 to purchase" shares of Symantec stock held by Mr. Layman.  Exhibit A, Warrant at page 1.  Mr. Layman contends that the Warrant established a "deadline" of April 6, 2005 to complete the purchase of the stock.  He also maintains that to complete the purchase, PPFF

---

10 Summary judgment is appropriate in an action for declaratory judgment only when there are no material issues of fact and the moving party is entitled to judgment as a matter of law.  Branson v. Port of Seattle, 152 Wn. 2d 862, 877, 101 P.3d 67, 74-75 (2004); Wilson v. Steinbach, 98 Wn. 2d 434, 437, 656 P.2d 1030, 1032 (1982) (citing Barrie v. Hosts of Am., Inc., 94 Wn. 2d 640, 642, 618 P.2d 96 (1980)).  Summary judgment is also appropriate when a plaintiff fails to establish any element essential to his case.  Cluff v. CMX Corp., 84 Wn. App. 634, 638, 929 P.2d 1136, 1138 (1997).

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 20
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   had to tender the purchase price and return the original Warrant by the April 6, 2005

2   "deadline."

3       As discussed above, the Warrant does not state that the stock purchase must be

4   closed on or before April 6, 2005.  In fact, the Warrant is silent regarding a "deadline" for

5   closing the stock purchase transaction once PPFF provides Mr. Layman with its Election to

6   Exercise.  Moreover, the conduct of the parties strongly evidences that neither Mr. Layman

7   nor PPFF understood April 6, 2005 to be such a "deadline."   See Cuggino Decl. at ¶¶ 11-

8   14 and Exhibits J-O; Topetzes Decl. at ¶ 10 and Exhibit 9.  In particular, after April 6,

9   2005, the parties continued to communicate regarding the closing of the stock purchase

10  transaction.   Mr. Layman's contention in this lawsuit that April 6, 2005 date was a

11  "deadline" apparently was formed sometime after April 6, 2005.  Exhibit 10, Layman

12  Depo. at 157:5-158:13.[11]

13      The record is undisputed that Mr. Layman breached his contract with PPFF by

14  failing to abide by the terms and conditions of the Warrant and, in particular, by failing to

15  comply with his obligations under Articles 2.7, 4 and 5 of the Warrant.  Specifically, Mr.

16  Layman agreed that: (1) he would "perform such other and further acts as shall be

17  necessary to effectuate the rights of the other party to this Warrant" (Article 4); (2) he

18  would to take all actions necessary to protect PPFF's rights under the Warrant and not to

19  seek to avoid observance or performance of any actions under the Warrant (Article 2.7);

20

21  11 Significantly, when the time for making payment is not explicitly specified in an option contract, payment
    only needs to be made within a reasonable time.  See, e.g., Duprey, 52 Wn. at 135, 323 P.2d at 906 (holding
22  that "[w]hen, as here, no time is specified in the option agreement for the final payment and delivery of the
    instruments of conveyance, the time of payment and delivery is a reasonable time after acceptance of the
23  offer").  The Warrant does not explicitly provide that payment and delivery of the original Warrant was
    required by April 6, 2005.  Moreover, as discussed above, nothing contained in the Warrant speaks directly to
24  the obligation of PPFF to deliver the original Warrant and a check for the final purchase price to Mr. Layman
    under circumstances where Mr. Layman has failed to secure his obligations by delivering the signed stock
25  assignment forms to State Street.  Nevertheless, the facts regarding these matters are undisputed, and the
    Court is equipped to decide these issues as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at
26  252 (summary judgment is appropriate where record is devoid of evidence on which the fact finder "could
    reasonably find for the [nonmoving party]." ).

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 21
291/512564.01
030706/2138/62316.00001

1   and (3) he would deposit with State Street stock certificates for the Symantec shares

2   covered by the Warrant, "along with stock assignments executed in blank" (Article 5).  He

3   failed to perform in each of these areas.  PPFF's requests that Mr. Layman contact its

4   representative to coordinate the closing of the stock purchase transaction and deliver the

5   executed stock powers were entirely consistent with the obligations undertaken and

6   contemplated by the parties when the Warrant was executed.  Mr. Layman's apparent

7   contention that the Warrant permitted him to refuse to deliver the stock power forms and

8   avoid communicating with PPFF representatives regarding the stock purchase transaction

9   until after a supposed "deadline," and thereupon, assert that the rights of PPFF under the

10   Warrant are extinguished, is both dishonorable and utterly devoid of merit.

11       Mr. Layman cannot establish either that PPFF acted inappropriately or that he

12   performed his obligation to effectuate the rights of PPFF to purchase the Symantec stock.

13   Accordingly, PPFF is entitled to entry of summary judgment on Mr. Layman's declaratory

14   judgment claim, and the closing of the stock purchase transaction should occur as

15   contemplated by the Warrant.

16       PPFF requests that this Court declare pursuant to RCW 7.24.010 - .190 and Civil

17   Rule 57 that Mr. Layman should sign and deliver the stock assignment forms necessary to

18   effectuate the transfer of the Symantec stock to PPFF and that Mr. Layman has no right to

19   continue to prevent the closing of the purchase transaction under the Warrant.  Pursuant to

20   RCW 7.24.100, PPFF also requests that the Court award it costs incurred with respect to

21   this action.

### IV.   CONCLUSION

22       PPFF respectfully requests that the Court: (1) grant its Motion for Summary

23   Judgment on Plaintiff's Claim for Declaratory Judgment and Defendant's Counterclaims

24   for Breach of Contract; (2) order Mr. Layman to execute the stock assignment forms and

25   perform all acts necessary for State Street to turn over the certificates to PPFF in return for

26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 22
291/512564.01
030706/2138/62316.00001

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  payment to Mr. Layman in the amount of $250,200 as contemplated by the Election to

2  Exercise sent to Mr. Layman by PPFF on March 10, 2005; (3) award PPFF monetary

3  damages, including prejudgment interest, in an amount to be subsequently determined,

4  flowing from the breach of contract by Mr. Layman; and (4) grant such other and further

5  relief as the Court deems appropriate.

6  DATED this 7th day of March, 2006.

7  Respectfully submitted,

8

9  Paul J. Kundtz, WSBA # 13548                     Of Counsel:
   pkundtz@riddellwilliams.com                      Stephen G. Topetzes
10 Courtney L. Seim, WSBA # 35352                   Lisa M. Richman
   cseim@riddellwilliams.com                        *Admitted pro hac vice*
11 RIDDELL WILLIAMS, P.S.                           KIRKPATRICK & LOCKHART
   1001 Fourth Avenue Plaza                         NICHOLSON GRAHAM LLP
12 Suite 4500                                       1800 Massachusetts Ave. N.W.
   Seattle, Washington 98154                        Suite 200
13 Tel.: 206-624-3600                               Washington D.C. 20036
   Fax: 206-389-1708                                Tel: 202-778-9001
14                                                  Fax: 202-778-9100

15

16 Attorneys for Defendant and Counterclaimant, Permanent Portfolio Family of Funds, Inc.

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:05-cv-980MJP) - 23
291/512564.01
030706/2138/62316.00001