1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW LAYMAN, a married man,

                Plaintiff,

    v.

THE PERMANENT PORTFOLIO FAMILY
OF FUNDS, INC., a Maryland corporation,

                Defendant.

No.  2:05-cv-980 MJP

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**Noted for: 4/7/06**
**Oral Argument Requested**

## I.    <u>INTRODUCTION</u>

In its Motion for Partial Summary Judgment, Defendant The Permanent Portfolio
Family of Funds ("the Fund") relies upon three premises in attempting to show that its breach
of contract counterclaims can be adjudicated on summary judgment.  The Fund's arguments
are not supported by either the law or the facts.

First, the Fund contends that the Warrant is unambiguous and the Court may interpret
it on summary judgment as a matter of law.  However, the Court has already ruled that the
Warrant is ambiguous in several respects and thus questions of fact exist that preclude
summary judgment.  Under the law of the case, the Fund's motion must be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 1
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1     Second, the Fund states that neither party is relying upon parole evidence.  In fact,

2     several pieces of parole or extrinsic evidence are relevant to this matter and Plaintiff Andrew

3     Layman relies upon them in this Opposition and in his own Motion for Partial Summary

4     Judgment which addresses overlapping issues.  Third, the Fund summarily dismisses all

5     disputed facts as Mr. Layman's "subjective interpretations" or "opinions" and ignores the rule

6     of law that all reasonable inferences from the evidence must fall in Mr. Layman's favor.

7          For example, Mr. Layman is entitled to an inference that the parties intended April 6,

8     2005 be an expiration date for all rights and obligations under the Warrant because the

9     evidence shows that during the parties' negotiations Mr. Layman specifically requested and

10    the Fund agreed, without reservation, to the inclusion of a provision in the Warrant that if it

11    had not been exercised by April 6, 2005 the Warrant would "lapse" and "have no further force

12    and effect."

13         Mr. Layman is also entitled to an inference that, contrary to the Fund's argument,

14    executed stock assignment forms (turning over control of stock certificates and allowing

15    certificates to be re-registered in a purchaser's name) were not intended to be a condition

16    precedent to the Fund's obligation to tender payment to Mr. Layman or to the exercise of the

17    Warrant.  Mr. Layman is entitled to this inference because: (1) the language of the Warrant

18    provides for tender of payment by the Fund before the Fund is entitled "to receive a certificate

19    or certificates for the shares of the Common Stock so purchased"; and (2) the evidence shows

20    that the Fund never asked Mr. Layman to sign such forms when new certificates were issued,

21    that the Fund's Election to Exercise setting forth the terms of the exercise was silent as to the

22    execution of stock assignment forms and that the Fund admitted Mr. Layman's position that

23    stock assignment forms were not required before payment was "very reasonable."

24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 2
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    Several other questions of fact are raised by this motion as to what the parties intended

2    when they signed the Warrant agreement.  For these reasons, the Fund's motion seeking

3    summary judgment on its breach of contract counterclaims and Mr. Layman's declaratory

4    judgment claim must be denied. [1]

5    ## II.    STATEMENT OF FACTS

6    On April 6, 1990, Plaintiff Andrew Layman and the Fund entered into a contract

7    entitled "Common Stock Purchase Warrant."  *See* Declaration of Laurie Thornton (hereinafter

8    "Thornton Decl."), filed herewith, Ex. 1 ("the Warrant").  Under the Warrant, Mr. Layman

9    gave the Fund an option for a period of fifteen years to purchase certain shares of Symantec

10   Corporation stock that he owned.  *Id.*  The Warrant directed that to purchase the stock, the

11   Fund had to tender to Mr. Layman a check for the Purchase Price[2] of the shares and the

12   original signed Warrant by April 6, 2005.  *Id.* at p.1.  Upon presentation of these two items,

13   the Fund was entitled to receive the stock certificates.  *Id.*  However, if the Warrant had not

14   been exercised by April 6, 2005, it lapsed and had "no further force and effect."  *Id.* at p.2.

15   As required under the Warrant, the Fund gave Mr. Layman two weeks' notice of its

16   intent to exercise its rights under the Warrant.  Thornton Decl. Exs. 1, 2.  The Fund sent

17   Mr. Layman an "Election to Exercise" on March 10, 2005.  Thornton Decl. Ex. 2 (hereinafter

18   "the Notice").  The Notice set "a closing date and time for the exercise" of March 25, 2005 at

19   4:00 p.m. and stated the Fund would tender a check for the Purchase Price and the original

20   Warrant to Mr. Layman on that date.  *Id.*  The Notice did not require that Mr. Layman execute

---

22   [1] The Fund's remaining counterclaims (for promissory and equitable estoppel) and the Fund's
23   monetary damages claim are the subject of a separate motion for partial summary judgment filed by
     Mr. Layman which is also noted for consideration on April 7, 2006.

24   [2] The Purchase Price is defined as the number of shares being purchased multiplied by a value
     of 55.6% of the closing price of Symantec stock on April 6, 1990. Thornton Decl. Ex. 1 at p. 1.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 3
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   any stock assignment forms as a condition precedent to the tender of the Purchase Price and

2   Warrant.

3        However, rather than proceed with the closing, the Fund refused to tender the

4   Purchase Price.  Instead the Fund demanded that Mr. Layman provide it with executed stock

5   assignment forms so that the Fund could transfer the Symantec stock shares into its name.

6   Thornton Decl. Exs. 3, 4.  This was a departure from the Warrant and Mr. Layman did not

7   sign the stock assignment forms.  Both the March 25 closing date and the April 6, 2005

8   expiration date of the Warrant passed without the Warrant being exercised.

9        The Fund has alleged counterclaims for breach of contract claiming the responsibility

10   for the failure to close the transaction lies at Mr. Layman's door because he did not execute

11   the stock assignment forms and failed to contact the Fund to say that he would not execute the

12   forms.  The Fund contends Mr. Layman was obligated under the Warrant to do both of these

13   things.  However, Mr. Layman contends that he was not so obligated and the Fund's decision

14   not to tender payment led to the failure to exercise and the expiration of the Fund's rights.

15   The evidence supports Mr. Layman's position.

16   **A.**    **Provisions of the Warrant at Issue**

17        The Warrant was originally drafted by the Fund's then-president Terry Coxon or

18   someone on his behalf.  Thornton Decl. Ex. 5 at 58:6-16.  Mr. Layman suggested several

19   changes and added one substantial paragraph, discussed below.  However, the majority of the

20   Warrant remains as the Fund drafted it.  Four of the Warrant's provisions are at issue on this

21   motion and each party presents a different interpretation of each provision.

22       *1.*    *"No Further Force and Effect" after April 6, 2005*

23        First, the Fund had the right "at any time. . .to and including April 6, 2005 to

24   purchase" the shares of stock and "Upon lapse of the Warrant or failure to exercise prior to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 4
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  April 6, 2005, the parties agree that the Warrant will have no further force and effect."

2  Thornton Decl. Ex. 1 at p. 1-2.

3  The Fund contends this was not a "deadline" to complete the purchase of the stock,

4  but instead was the date by which the Fund had to give its notice of the election to exercise

5  after which it had a reasonable time to close the transaction.  Defendant's Motion for Partial

6  Summary Judgment ("Motion") at 13-15.  Mr. Layman contends, as he did in his August 2005

7  motion for partial summary judgment, that the Fund had to exercise the Warrant by tendering

8  the Purchase Price to him by that date.  The Court has already ruled that there are questions of

9  fact as to the meaning of this term.  *See* Order Denying Plaintiff's Motion for Partial

10  Summary Judgment ("Order"), filed 10/31/2005, dkt. # 23.  However, evidence exists outside

11  the Warrant, not before the Court on the previous motion, that supports Mr. Layman's

12  position.

13  During the original negotiations of the Warrant, Mr. Layman specifically requested

14  that the Warrant be amended to add the "no further force and effect" clause.  Thornton Decl.

15  Ex. 6.  He wanted a definitive end to the option he was granting and a time at which the

16  Warrant would end.  *Id.*  The Fund agreed to add the amendment without exception, objection

17  or reservation, and the Fund accepted Mr. Layman's suggested language as proposed.

18  Thornton Decl. Ex. 7.

19  After the Warrant was executed, the Fund repeatedly recognized April 6, 2005 as the

20  "expiration" of the Warrant.  A November 2004 email from the Fund to Mr. Layman stated

21  the parties were "five months away from the Warrant's April 5, 2005 expiration date."  [sic]

22  Thornton Decl. Ex. 8.  In another email on March 8, 2005, the Fund again stated "As you

23  know, the Warrant expires on April 6, 2005."  Thornton Decl. Ex. 9.  The Fund both sent its

24  Notice and sought to exercise and close the transaction before April 6, 2005.  Thornton Decl.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 5
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    Ex. 2.  And finally, just days before the deadline, the Fund emailed Mr. Layman on April 1,

2    2005 about re-registering the shares "before the expiration of the Warrant next week."

3    Thornton Decl. Ex. 4.

4         **2.      *Requirements to "Exercise" the Warrant***

5         Second, the Warrant provides that to purchase and receive possession of the Symantec

6    stock at issue, the Fund had to present and surrender to Layman the payment of the Purchase

7    Price and the original of the Warrant.  Thornton Decl. Ex. 1 at p. 1.  Only after presentation

8    and surrender of these documents was the Fund entitled to the stock certificates.  *Id.*  The

9    Warrant also provided a "Subscription Form," drafted by the Fund, that was to be filled out

10   for the exercise of the Warrant.  Thornton Decl. Ex. 1 at p. 12.  Echoing the language of the

11   Warrant, the Subscription Form directed that a check for the Purchase Price would be

12   enclosed "herewith" as part of the exercise.  (*Id.*)

13        Beyond the Warrant and the "Subscription Form," the Fund's Notice also discussed

14   the exercise, set forth a "closing date and time for the exercise of the purchase" and stated that

15   at the time of the exercise the Purchase Price and the original Warrant would be tendered to

16   Mr. Layman.  Thornton Decl. Ex. 2.  The Notice mirrors the terms of the Warrant, separating

17   the notice from the "closing date and time of the exercise" and thus treating the notice and the

18   exercise as two separate events.  Thornton Decl. Ex. 1 at p.3, Ex. 2.

19        The parties have a dispute as to whether the Fund's Notice was the exercise or whether

20   the Fund had to tender the Purchase Price check in order to exercise.  In its prior ruling,

21   before the Court had the opportunity to consider the significance of the "Subscription Form"

22   and other parol evidence, the Court held that there are issues of fact as to what the Fund had

23   to do "exercise."  The additional parol evidence, such as the Subscription Form, provides

24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 6
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   further support for Mr. Layman's contention that tender of a check was required for any

2   exercise of the Warrant.

3         ***3.***      ***The Role of Stock Assignment Forms***

4         Third, the Warrant provided that "to secure his obligations" under the Warrant,

5   Mr. Layman would "<u>concurrently</u> with the execution and delivery of this Warrant" (emphasis

6   added) deposit the stock certificate representing the 22,500 shares of Symantec with State

7   Street Bank & Trust, custodian for the Fund, along with "stock assignments executed in

8   blank" for the certificate(s).  Thornton Decl. Ex. 1 at p.10.  The Warrant made no provision,

9   however, for any splits in the stock or for additional stock certificates to be deposited.[3]

10        The Fund contends that this provision of the Warrant describing the initial deposit of

11  the initial stock certificate to "secure [Mr. Layman's] obligations" supports its position that

12  stock assignment forms for all the shares had to be executed before it would be obligated to

13  tender the Purchase Price.  The original stock assignment form was signed and held by State

14  Street Bank, the Fund's custodian, as collateral for Mr. Layman's performance under the

15  Warrant.  Thornton Decl. Ex. 5 at 67:15-68:2.  Unlike the Fund's later demand for stock

16  assignment forms, the initial form was not executed for the purposes of re-registering the

17  stock in the Fund's name.  It remained in State Street's vaults.  There is no provision in the

18  Warrant for any right the Fund had to the certificates before it purchased them.  Thornton

19  Decl. Ex. 1.  In fact, the Warrant directs that the Fund would not be entitled to receive any

20  stock certificates until after it had presented the Purchase Price check.  *Id.* at 1.

21

22  _____

23       [3] In contrast, the Warrant contains four pages of provisions regarding other adjustments to the Warrant and the Purchase Price in case of any split in the Symantec stock, payment of a cash dividend, reorganization or merger of Symantec, subscription offering or any voluntary or involuntary

24  dissolution or bankruptcy of Symantec. Thornton Decl. Ex. 1 at p. 4-9.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 7
No. 2:05-cv-980MJP

**CORR CRONIN MICHELSON**
**BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1       Also, parol evidence establishes an important admission by the Fund regarding the

2   Fund's contention that Mr. Layman had to execute stock assignment forms before tender of

3   the Purchase Price.  On April 12, the Fund admitted, after consultation with its counsel, that

4   Mr. Layman's position that he was not obligated to sign any stock assignment forms prior to

5   receiving the Purchase Price check was "very reasonable."  Thornton Decl. Ex. 10.

6       Several other facts also suggest that executed stock assignment forms were not a

7   condition precedent to payment of the Purchase Price.  First, during the course of the

8   Warrant's option period, after each Symantec stock split the Fund requested that Mr. Layman

9   obtain and deposit with State Street a certificate for the new shares, Thornton Decl Exs. 11,

10   12, but the Fund did not ask for stock assignment forms for the last three certificates.  *Id.*

11   Second, in March 2005, the Fund sent the Notice which set forth the terms under which the

12   Fund believed the closing should occur.  Thornton Decl. Ex. 2.  The Notice makes no mention

13   of stock assignment forms or the need to execute them as a condition of the closing.  *Id.*

14   Additionally, when the Fund's president called Mr. Layman on March 15, 2005 to confirm

15   that he had received the Notice and to reiterate the closing date, the Fund never mentioned

16   any need to execute stock assignment forms.  Thornton Decl. Ex. 5 at 120:15-121:8.

17       The Fund began asking Mr. Layman to execute the forms only two days before the

18   closing, Thornton Decl. Ex. 3, and it did not actually provide the forms to him until three days

19   after the scheduled March 25, 2005 closing date had passed.  Thornton Decl. Ex. 13.  Thus, it

20   would have been impossible for such forms to be part of the anticipated closing.  The Fund

21   also provided Mr. Layman no authority for its demand that the forms be executed and the

22   stock re-registered into the Fund's name *before* Mr. Layman was entitled to receive the

23   Purchase Price.  Thornton Decl. Exs. 3, 4.

24

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    **4. *"No Impairment" Clause and Duties under the Warrant***

2     Finally, the Warrant provided that Mr. Layman would not "avoid or seek to avoid the

3 observance or performance of *any of the terms of this Warrant*" and would assist in carrying

4 out or taking all actions "necessary or appropriate" to protect the Fund's rights as holder of

5 the Warrant.  Thornton Decl. Ex. 1 at p. 9 (emphasis added).  The Fund contends this

6 obligated Mr. Layman to call the Fund and explain that he was not going to execute stock

7 assignment forms until he had received the Purchase Price.

8     The Fund's president has admitted that Mr. Layman did not have an obligation to tell

9 the Fund how to perform under the Warrant.  Thornton Decl. Ex. 14 at 87:1-5.  Instead, he

10 recognized it was his own obligation "to understand the document and perform in accordance

11 with the document."  *Id.*  And again, the Fund has also admitted that Mr. Layman's position

12 that he receive the Purchase Price before executing any stock assignment forms was "very

13 reasonable."  Thornton Decl. Ex. 10.

14     It is undisputed that Mr. Layman was prepared to take whatever steps were necessary

15 to assist in transferring the Symantec stock to the Fund *after* he had received the Purchase

16 Price check.  Thornton Decl. Ex. 5 at 120:8-11, 124:16-19, 126:5-15.  However, until he

17 received the check there were no obligations for him to perform.  *Id.*

18 **B. Post-April 6 Communications Between the Parties.**

19     After the April 6, 2005 passed without the Warrant being exercised, the Fund and

20 Mr. Layman spoke by telephone on April 12, 2005.  Thornton Decl. Ex. 5 at 133:22-134:6;

21 Ex. 15.  Mr. Layman asked the Fund's president why he had not yet received the Purchase

22 Price check.  Thornton Decl. Ex. 5 at 133:22-134:6.  The Fund's president, Michael Cuggino,

23 replied that he had the check sitting in his desk but was waiting to receive the executed power

24 of attorney forms before he would send it.  Thornton Decl. Ex. 5 at 134:2-4; 153:10-18;

**CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  Ex. 15.  Mr. Cuggino said that he would consult with his counsel and get back to Mr. Layman

2  as to what he suggested the parties do.  Thornton Decl. Ex. 14 at 78:12-17; Ex. 15.

3       Mr. Cuggino called Mr. Layman again on April 14, 2005, and left him a voicemail

4  message.  Thornton Decl. Ex. 10.  After talking with counsel, the Fund admitted that it was

5  "very reasonable" for Mr. Layman to want to receive the check before turning over control of

6  the stock to the Fund and suggested that the parties meet in person to perform both actions

7  simultaneously and close the transaction.  *Id.*  At that point Mr. Layman had not decided what

8  to do.  To the proposal for a meeting, Mr. Layman responded, "I expect to be in the SF area

9  around May 12 or 13th.  By the end of this week, I should have a more exact schedule."

10  Thornton Decl. Ex. 16.  No date was set and no further communications were had for three

11  weeks until the Fund's president emailed Mr. Layman again about meeting.  Thornton Decl.

12  Ex. 17.  Mr. Layman responded "I will be in Palo Alto May 12, afternoon and evening." *Id.*

13  The Fund suggested that Mr. Layman meet with the Fund's corporate secretary on May 12,

14  2005, but Mr. Layman never agreed to a closing and never confirmed he would attend such a

15  meeting.  *Id.*  At the time, he had not determined whether he would agree to sell the stock to

16  the Fund.  Thornton Decl. Ex. 5 at 163:1-8; 168:17-23.  Never, during any of these

17  communications, did Layman ever state that he considered the Warrant to still be in effect and

18  that he would waive or disregard the Warrant's April 6 deadline.  After deciding not to sell

19  the stock to the Fund, Mr. Layman filed this lawsuit was on May 10, 2005.

## III.   ARGUMENT

**A.   Summary Judgment Cannot be Granted where the Warrant is Ambiguous and All Inferences Must be Drawn in Mr. Layman's Favor.**

The first premise of the Fund's motion is that the Warrant is unambiguous, therefore

interpreting its provisions is a question of law for the court and this matter may be resolved on

**CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    summary judgment.  However, if the Warrant is unclear as to the parties' intentions, is open to

2    different interpretations or contains conflicting provisions, it is ambiguous and there are issues

3    of fact as to what the parties intended the contract to provide.  Under these circumstances,

4    summary judgment is not appropriate.  *See Wm. Dickson Co. v. Pierce County*, 128 Wn. App.

5    488, 493 (2005) ("As a general rule, we consider the parties' intentions questions of fact");

6    *Rogers v. Prudential Ins. Co.*, 218 Cal. App. 3d 1132, 1136 (1990) (ambiguous contract

7    "presents a question of fact which is inappropriate for summary judgment").

8            A contract is ambiguous "when its terms are uncertain or when its terms are [certain

9    but] capable of being understood as having more than one meaning."  *Mayer v. Pierce County*

10   *Medical Bureau*, 80 Wn. App. 416, 421 (1995); *see also Falkowski v. Imation Corp.*, 132 Cal.

11   App. 4th 499, 505 (2005) (contract ambiguous when "on its face, the language of the

12   provision is capable of different, yet reasonable interpretations").  When the court is called

13   upon to construe an ambiguous contract, the goal is to ascertain the parties' intent.  *See Berg*

14   *v. Hudesman*, 115 Wn. 2d 657, 663 (1990); Cal. Civil Code § 1636 (a contract must be

15   interpreted "as to give effect to the mutual intention of the parties as it existed at the time of

16   contracting").

17           Courts will consider extrinsic evidence such as the circumstances leading to the

18   execution of the contract, the subsequent conduct of the parties and reasonableness of the

19   parties' respective interpretations in order to ascertain what the parties intended the contract

20   provide.  *See Berg* at 667-669; *see also* Cal. Civil Code § 1647 (circumstances under which

21   contract was made can be considered); *Oceanside 84, Ltd. v. Fidelity Federal Bank*, 56 Cal.

22   App. 4th 1441, 1449 (1997) ("The conduct of the parties after the execution of the contract,

23   and before any controversy arose, may be considered in order to attempt to ascertain the

24   parties' intention.").   Extrinsic evidence may be considered even when the disputed provision

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 11
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   is unambiguous if the evidence helps the court determine the parties' intent. *See Berg* at 669;

2   *see also Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33,

3   37-39 (1968) (extrinsic evidence admissible even if contract appears unambiguous if "the

4   offered evidence is relevant to prove a meaning to which the language of the instrument is

5   reasonably susceptible."). When a contract is ambiguous or open to different interpretations,

6   summary judgment is again inappropriate. *See Hall v. Custom Craft Fixtures, Inc.*, 87 Wn.

7   App. 1, 10 (1997); *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912-13 (1998).

8         In interpreting the Warrant, all reasonable inferences must be made in favor of

9   Mr. Layman. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630-

10  31 (9th Cir. 1987). As the non-moving party Mr. Layman's evidence "is to be believed, and

11  all justifiable inferences are to be drawn in [his] favor." *Eastman Kodak Co. v. Image Tech.*

12  *Servs.*, 504 U.S. 451, 456 (1992) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

13  (1986). His evidence is not subject to "credibility determinations, the weighing of the

14  evidence, [or] the drawing of legitimate inferences" on summary judgment. *Anderson*, 477

15  U.S. at 255 (holding such issues should be reserved for the trier of fact). Instead,

16  Mr. Layman's "version of any disputed issue of fact thus is presumed correct." *Eastman*

17  *Kodak*, 504 U.S. at 456.

18        There are disputes of material fact regarding almost every element of the Fund's

19  motion. There is a dispute as to what the parties intended several of the Warrant's provisions

20  to mean, what those provisions required of each party and whether each party performed its

21  obligations. The only way the Fund addresses these disputes is to call them Mr. Layman's

22  "subjective interpretation" and "opinion." However, the evidence and both parties' conduct

23  support Mr. Layman's interpretation, and under the law his evidence must be accepted as true,

24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 12
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

given full weight and any inferences drawn in his favor.[4]  *See Eastman Kodak*, 504 U.S. at

456; *Anderson*, 477 U.S. at 255.

**B.     The Warrant is Ambiguous and Reasonable Inferences from the Extrinsic Evidence Support Mr. Layman's Interpretations.**

Ambiguities exist in the Warrant as to what the parties intended several of its

provisions to mean.  Each of the arguments made in the Fund's motion relies upon these

ambiguous provisions of the Warrant and requires the consideration of extrinsic evidence to

resolve.  Thus, questions of fact exist regarding issues material to this case that preclude

granting summary judgment. *See Hall,* 87 Wn. App. at 10.

**1.     *The Court has Already Ruled that there are Issues of Fact as to What the Fund Was Required to Do Before April 6, 2005.***

The Warrant provides that if there was no "exercise" of the Warrant by April 6, 2005,

it would "lapse" and have "no further force and effect."  Thornton Decl. Ex. 1 at p.2.  The

Fund interprets this provision to require only that it issue its Notice before that date, and once

the Notice had been issued the Fund had a reasonable time to perform.  The Fund did issue its

Notice before April 6 and therefore argues it has fully performed and is entitled to enforce the

Warrant against Mr. Layman.  However, based on the language of the Warrant and the

extrinsic evidence, Mr. Layman contends that to "exercise" the Fund had to actually tender

the Purchase Price to him prior to April 6, 2005.

The Court considered these exact same issues earlier in the case and found that the

"Warrant does not clearly indicate what actions [the Fund] had to take before April 6, 2005 to

'exercise' the Warrant, nor does it explicitly provide that [the Fund] had to tender payment by

---

[4] In addition to the inferences Mr. Layman is due as the non-moving party, ambiguous provisions in the Warrant must also be construed against the Fund as a rule of contract construction. *See* Cal Civil Code § 1654 (ambiguities must be construed against the party who drafted the provision and caused the uncertainty to exist).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 13
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    that date." Order, dkt. # 23, at 8.  Thus, the court has already established that there are

2    ambiguities in the Warrant as to what the Fund was required to do before April 6 and what it

3    had to do to "exercise."  Where there is an ambiguity as to what the Fund was obligated to do,

4    there is necessarily also a question of fact as to whether the Fund fully performed such

5    obligations.[5]  The Fund's current motion presents the same argument that was before the

6    Court on Mr. Layman's motion for summary judgment.  The law of the case has already

7    established that ambiguity exists as to these issues and precludes summary judgment on the

8    Fund's breach of contract counterclaims.

9          In addition, the reasonable inferences to be drawn from the extrinsic evidence support

10   Mr. Layman's interpretation of the Warrant.  For instance, Mr. Layman asked that the

11   Warrant be amended to provide a specific termination date and the Fund agreed to this

12   provision without objection or exception.  It is reasonable to infer from this that the parties

13   intended April 6, 2005 as the expiration date for all rights and obligations under Warrant and

14   thus any exercise or purchase had to be completed before that date.  In addition, the Fund's

15   March 10 Notice contemplates a subsequent exercise and sets a separate "closing date and

16   time for the exercise of the purchase".  The Fund also sought to complete the closing before

17   April 6, 2005, and the Fund repeatedly communicated to Mr. Layman that it considered

18   April 6 to be the Warrant's expiration date.  The reasonable inference from this evidence is

19   that both parties intended that any purchase of the Symantec stock be completed before

20   April 6, 2005.    Finally, both the Fund's Notice and the "Subscription Form" that the Fund

21

22           [5] There are also questions about the Fund's statement that it was ready to close the transaction and tender the Purchase Price on March 25, 2005.  First, it had not provided the requested stock

23   assignment forms to Mr. Layman which it was requiring to close.  Second, the Fund did not obtain the Purchase Price check in its offices in San Francisco until the afternoon of March 25 and had no plan

24   for presenting the Purchase Price to Mr. Layman in Seattle other than putting it in the mail.  Thornton Decl. Ex. 18; Ex. 14 at 52:20-53:7.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 14
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    drafted and included with the Warrant indicated that payment would be tendered as part of the

2    "exercise." Again, the reasonable inference is that the parties intended that the exercise of the

3    Warrant would occur when the Fund tendered a check to Mr. Layman. It did not tender a

4    check prior to April 6, and has never done so. The Fund's rights under the Warrant have

5    expired.[6]

6          **2.    *The Warrant is Ambiguous as to the Time for Stock Assignment Forms.***

7          In support of its position that Mr. Layman breached the Warrant by failing to execute

8    stock assignment forms, the Fund relies upon Article 5 of the Warrant, but Article 5 discusses

9    the deposit of the original stock certificate and it makes no reference to the exercise of the

10   Warrant or to the role of stock assignments in any such exercise. Mr. Layman contends that,

11   based on the Warrant's provisions, he should have received the Purchase Price check on the

12   closing date set by the Fund, or any other date prior to April 6, 2005, and stock assignment

13   forms would have been executed after that. Under Mr. Layman's interpretation, if the Fund

14   never tendered the check (and it did not), Mr. Layman's obligation to execute the stock

15   assignment form for the exercise never arose.

16         The language of the Warrant supports Mr. Layman's interpretation. It directs that only

17   "upon presentation and surrender" of the Warrant and the Purchase Price check would the

18   Fund become "entitled to receive a certificate or certificates for the shares of Common Stock

19   so purchased." Thornton Decl. Ex. 1 at p. 2. Thus, on its face the Warrant rejects the Fund's

---

20   [6] Nor is there any support for the Fund's position that Mr. Layman agreed to close the Warrant
21   transaction after April 6, 2005, thereby indicating that he did not consider the April 6 "deadline" or
     expiration date enforceable. After recognizing that Mr. Layman's position was "very reasonable," the
22   Fund suggested that the parties perform an in-person closing. Mr. Layman merely responded as to
     dates he would be in the Bay Area, he did not agree to such a closing nor did in any way indicate that
23   he was waiving the April 6 expiration of the Warrant. Mr. Layman incorporates herewith the
     arguments made in his own summary judgment motion regarding Fund's estoppel counterclaims on
24   this issue.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 15
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    position that it was entitled to control of the stock before the closing.  It is clear that the Fund

2    would not be entitled to control of the stock certificates – and therefore not entitled to

3    executed stock assignment forms or to re-register the stock – until after the Purchase Price had

4    been tendered.

5            The extrinsic evidence indicates that Mr. Layman's interpretation, as the Fund has

6    admitted, was "very reasonable."  The Fund's Notice and the Subscription Form both address

7    the exercise of the Warrant.  While both state that the Purchase Price was to be tendered in

8    conjunction with the closing, neither refers to the execution of stock assignment forms as a

9    condition precedent to tender of the Purchase Price.  The only reasonable inference that can

10   be drawn from these documents is that the stock assignment forms were not a condition

11   precedent to tender of the Purchase Price.  This also can be inferred from the facts that the

12   Fund did not ask for stock assignment forms for the last three stock certificates that were

13   given to the Fund in connection with stock splits; that the Fund did not ask for the forms

14   during the parties' March 15 call discussing the closing; and that the Fund did not provide Mr.

15   Layman with the forms to be signed prior to the Fund's self-selected closing date.

16          The only evidence the Fund offers in contradiction to this is its own "subjective

17   interpretation" emails demanding that signed forms be submitted before it would present the

18   check and close the transaction.  Mr. Layman's interpretation that he was not required to sign

19   the stock assignment forms *before* he was entitled to receive the Purchase Price check is not

20   just a "subjective" belief but is instead supported by the greater weight of the evidence.

21          **3.      *The "No Impairment" Clause Did Not Place an Additional Duty on***

22                  ***Mr. Layman to Advise the Fund on how to Exercise the Warrant.***

23          Finally, the Fund contends that Mr. Layman also breached the Warrant by failing to

24   assist the Fund in closing the transaction and by not communicating to the Fund his position

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 16
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    that stock assignments should not be executed until after he had received the Purchase Price

2    check. The Fund relies upon the "No Impairment Clause" of the Warrant for this argument.

3        The "No Impairment" clause of the Warrant provides that Mr. Layman must assist in

4    carrying out and taking all such action "as may be necessary or appropriate" under the

5    Warrant. Thornton Decl. Ex. 1 at p. 9. This provision does not impose any additional duties

6    upon Mr. Layman, and it certainly does not require Mr. Layman to either act contrary to his

7    reasonable interpretation of the Warrant or to educate the Fund regarding the Fund's

8    obligation under the Warrant. It only reinforces that he must comply in good faith with the

9    substantive requirements of the Warrant.

10       The clause parallels, and the Fund has also invoked, the implied covenant of good

11   faith and fair dealing that both Washington and California recognize in all contracts. The

12   duty to act in good faith, however, "arises only in connection with terms agreed to by the

13   parties." *Mayer*, 80 Wn. App. at 422. It exists only in relation to the performance of specific

14   contract terms and neither expands nor contradicts the existing express terms of the contract.

15   *See Carma Developers Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374

16   (1992) ("the scope of conduct prohibited by the covenant of good faith is circumscribed by

17   the purposes and express terms of the contract"). The implied duty of good faith does not

18   "'inject substantive terms into the parties' contract.' Rather, it requires only that the parties

19   perform in good faith the obligations imposed by their agreement. Thus, the duty arises only

20   in connection with terms agreed to by the parties." *Badgett v. Sec. State Bank*, 116 Wn.2d

21   563, 569 (1991) (internal citations omitted). Moreover, the implied covenant of good faith

22   and fair dealing "does not impose an affirmative duty on a party to forbear from enforcing

23   rights expressly given under the contract." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,

24   100 Cal App. 4th 44, 56 n. 10 (2002) *citing Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465,

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

479 (1989) ("the covenant of good faith...does not impose any affirmative duty of moderation in the enforcement of legal rights.").

Where there are ambiguities and it cannot be determined what each party was obligated to do under the substantive provisions of the Warrant, Mr. Layman cannot be held to be in breach under the No Impairment Clause. As for communicating with the Fund, the Fund has admitted that Mr. Layman did not have an obligation to tell it how to perform under the Warrant and it was the Fund's own obligation "to understand the document and perform in accordance with the document." Thornton Decl. Ex. 14 at 87:1-5. Moreover, it is undisputed that Mr. Layman was ready and willing to assist in executing stock assignment forms or whatever else needed to be done to transfer the stock to the Fund *after* he had received the Purchase Price check. Thornton Decl. Ex. 5 at 125:9-18, 132:12-19. He simply was not willing to sign over control of the stock prior to receiving payment, he was not required to do so under the Warrant, and he expected to receive payment before executing any assignment forms. The only inference that can be drawn is that the Fund was responsible for ensuring its own compliance with the Warrant and Mr. Layman was not obligated to contact and point out the Fund's failure to act.

**C.    The Fund's Damages Remedy is Limited to Possession of the Symantec Stock.**

As the last element of its breach of contract claim, the Fund claims it is entitled to money damages for Mr. Layman's alleged breach of the Warrant. However, even if Mr. Layman had breached his obligations under the Warrant (and as discussed above he has not), the only relief the Fund could be entitled to is an order directing it is entitled to possession of the stock. The Fund claims monetary damages because it has "been unable to take possession or utilize the shares and/or make a determination as to whether a sale of some or all of the shares would be advantageous to [its] shareholders." Motion at 19. However, the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 18
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   Fund's own admissions show that (a) it would never have sold or "utilized" the stock had it

2   received possession in April or May 2005 and (b) it repeatedly rejected opportunities since

3   then to sell the stock.  Thus, as Mr. Layman addressed in his Motion for Partial Summary

4   Judgment which he incorporates here, any damage the Fund has incurred is speculative and

5   was caused by the Fund's own actions and decisions in retaining the investment in Symantec

6   stock.  Furthermore, the Fund is incorrect that it was entitled to the shares "in equity" at the

7   time the option was originally given and its case citation does not support that proposition.

8   As the Warrant states, the Fund was not entitled to the shares until it tendered the Purchase

9   Price.  It never has.

### IV.   CONCLUSION

10      For the foregoing reasons, disputed issues of material fact exist and the Court should

11  deny the Fund's motion for partial summary judgment.

12

13      Respectfully submitted this 3rd day of April, 2006.

14

15                          CORR CRONIN MICHELSON
                            BAUMGARDNER & PREECE LLP

16

17

18                          William F. Cronin, WSBA 8667
                            Laurie M. Thornton, WSBA 35030
19                          Attorneys for Plaintiff Andrew Layman

20

21

22

23

24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 19
No. 2:05-cv-980MJP

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

<u>CERTIFICATE OF SERVICE</u>

The undersigned declares as follows:

I am employed at Corr Cronin Michelson Baumgardner & Preece LLP, attorneys of record for plaintiff Andrew Layman herein.

I hereby certify that on April 3, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Courtney Seim
Riddell Williams P.S.
1001 Fourth Ave. Plaza, Suite 4500
Seattle, WA  98154
E-mail:  cseim@riddellwilliams.com
Telephone:  206.624.3600
Fax:  206.389.1708

Paul J. Kundtz
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA  98154
E-mail:  pkundtz@riddellwilliams.com
Telephone:  206.624.3600
Fax:  206.389.1708

Stephen G. Topetzes
Kirkpatrick & Lockhart Nicholson
Graham LLP
1601 K Street NW
Washington, D.C. 20006
E-mail:  stopetzes@king.com
Telephone:  202.778.9000

Lisa Richman
Kirkpatrick & Lockhart Nicholson
Graham LLP
1601 K Street NW
Washington, D.C. 20006
E-mail:  lrichman@king.com
Telephone:  202.778.9000

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 3rd day of April, 2006, at Seattle, Washington.

_____
Joyce Abraham

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT– 20
No. 2:05-cv-980MJP

**CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900